WILLIAM NICKELS AND THOMAS N. GAUTIER, PLAINTIFFS AND APPELLANTS, VS. EDWIN W. MOORING, DEFENDANT AND APPELLEE.

1. The Court will not set aside the verdict of a jury upon questions of fact, where there is a conflict of evidence, unless it may well be assumed from the circumstances of the case that some improper influence has been brought to bear to affect such jury contrary to the right.

2. The Court will not reverse a judgment simply for the reason that immaterial evidence was introduced on the trial. It must appear that such evidence was legally prejudicial to the parties' rights, or calculated to have an injurious influence upon the minds of the jury, and to mislead them in their endeavors to arrive at a correct conclusion.

3. Where there is no agreement to the contrary, and no fraud or collusion, each copartner has the right to settle demands due to, and give receipts to bind, the firm, even after the dissolution of such partnership.

4. It is not necessary that the court in charging the jury, as requested by counsel, should use the language of the counsel in announcing legal propositions; and when the Court has already instructed the jury upon a question, it is not error to refuse to repeat the matter so charged, however correct the proposition may be.

Appeal from the Circuit Court for Jackson county.

This is an action brought under the Code of Procedure by the plaintiffs, who had formerly been partners, to recover upon an open account for goods sold and delivered, and for money advanced for and loaned, while such partners, to the defendant. The defendant answered, pleading several defences, and among them payment by William Nickels, one of the plaintiffs, with money of defendant; and as another defence, that the account sued on was transferred and belonged to Nickels before it was paid as alleged. Afterwards the defendant filed a supplemental answer to the effect that since the filing of the original answer he had made full payment of all demands of plaintiffs against him, by giving to

Gautier a check drawn by VanBeil & Fisk, on the First National Bank of New York, and that in consideration thereof Gautier receipted in behalf of said plaintiffs in full to defendant for all demands of plaintiffs. Upon the trial the plaintiffs contended that the payment with Gautier was not in full settlement of all demands, and that it was made and received in fraud of said partnership, and in collusion and fraud between Gautier and Mooring; and that Nickels, at the time of such payment, was the only one authorized to settle the business of said partnership and receive payment of the debts due it, and that Mooring knew it.

There was much conflict in the testimony upon important questions involved in the issues. The jury brought in a verdict for the defendant, and the plaintiffs moved for a new trial upon the ground that the verdict was against the evidence and contrary to law, and that the court erred in admitting testimony which was not pertinent to the issues, but calculated to mislead the jury, and in its charge to the jury, and in refusing to charge the jury as requested by plaintiffs, and upon the ground that the jury gave consideration and weight to an admission of the plaintiff, Nickels, made to an attorney of the defendant as to the right of Gautier to make the settlement set up in the supplemental answer, which admission Nickels testified to have made in ignorance of his legal rights.

In support of the last ground of the motion the plaintiffs introduced two affidavits: one of Nickels, to the effect that "Daniel L. McKinnon, Esq., attorney for defendant, came to deponent and told him he had a receipt in full from Gautier for the account of Mooring; he was taken by surprise, as it was distinctly agreed by and between said Gautier and himself that he, deponent, was to be the sole liquidating partner; and this agreement was published in the *Marianna Courier* for several months, and he is satisfied that said Mooring knew of this agreement; he remarked to said Mc-

Kinnon that he did not care about the receipt, or words to that effect; that if anything else was said by deponent to said McKinnon in the shape of admission, as sworn to by said McKinnon, it was said in ignorance and mistake of his legal rights, and contrary to the real facts of the case. He has no recollection of having said to McKinnon that Gautier had as much right to give a receipt for Mooring's debt as he, the deponent, had, or words to that effect. If he so uttered them, as deposed to, they were said without reflection, hastily, and improvidently, and in mistake of his legal rights. Mr. McKinnon exhibited to him no receipt signed by Gautier at the time of said interview, which was a brief and hasty one; that he saw McKinnon after said interview, which was a brief and hasty one, between the time of defendant filing his supplemental answer and his deponent's replication thereto, and then, for the first time, he saw the receipt made by Gautier. McKinnon, at this second interview, asked him *what he intended doing about the suit?* meaning the present suit, and deponent replied *that he intended to fight it out.* He made this remark, being convinced that Nickels and Gautier had been defrauded by said Mooring, and Gautier in and by giving of said receipt; and that he, the deponent, believes that the jury, in forming their verdict for the defendant, did so entirely upon admission of deponent as testified to by McKinnon." And another affidavit made by two of the jurors, who heard the case, to-wit: B. Baker and J. W. Rawls, to the effect " that they were upon the jury that rendered the verdict in the case, and in coming to a conclusion as to what their verdict should be, the admission of Mr. William Nickels, one of the plaintiffs to Mr. McKinnon, 'that Mr. Gautier, one of the partners, had as much right, as he supposed, to give the receipt as he had, or words to that effect,' had much weight with them in forming their verdict, and not being instructed by the court that an admission made by a party in ignorance and mistake of his

legal right is not binding, they gave full validity to the receipt."

The notice of the dissolution of the partnership was published in 1868, in a newspaper at Marianna, Fla., and was as follows:

### "*Dissolution of Copartnership.*

" The copartnership of Nickels & Gautier dissolved by mutual consent. All accounts and business of the concern will be settled by William Nickels, who is desirous for all those who are indebted to make immediate payment.

"WILLIAM NICKELS.

" January 18–tf                "THOS. N. GAUTIER."

The other facts necessary to an understanding of the case are stated in the opinion of the court.

*Geo. S. Hawkins* and *W. H. Milton*, for Appellants.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court.

This was an action of assumpsit brought by the plaintiffs, who were merchants, under the provisions of the Code, in January, 1872, against the defendant Mooring, for goods, wares, and merchandise sold and delivered to the defendant, and claiming judgment for $1,388.88, besides cost. Attached to the complaint in the cause was a bill of the items of the plaintiffs' account, running from November 24th, 1862, to July 17th, 1867.

Previous to the commencement of this action, and in the year 1866, the plaintiffs had dissolved their connection as partners, and the business of the said firm was left in the hands of Wm. Nickels, one of them, to be settled, as appears by the notice of dissolution introduced in evidence.

Pending the action, and before it came on to be tried, the defendant Mooring compromised, settled, and paid the ac-

count, upon which the action was brought, to Thomas N. Gautier, the other partner in the concern, and one of the plaintiffs, and took his receipt in full for all demands due from him to the said plaintiffs as copartners. The plaintiff Nickels insisting that such payment was not a satisfaction of the claim of Nickels & Gautier, and that it was a fraud upon the said firm, and that it was made by collusion between the defendant Mooring and the plaintiff Gautier, pressed the suit to a trial, and the jury, after hearing all the proofs introduced on behalf of the respective parties, found a verdict for the defendant.

The questions arising upon the trial were principally questions of fact, and have been, therefore, determined by the finding of the jury. This court will not interfere to set aside the verdict of a jury upon questions of fact, where there is a conflict of evidence as in this case, unless it may well be assumed from the circumstances of the case that some improper influences have been brought to bear to affect the jury contrary to right. Wilson & Wilson vs. Dibble, 14 Fla., 47.

In this case it does not so appear from the record. The question of the sale and delivery of the goods to defendant, their value, the dissolution of the copartnership, the publication of the notice of such dissolution, and of the knowledge of such dissolution by the defendant, were all matters of proof, and evidence in reference to each and all of them was introduced by both parties. It is true that some evidence was introduced immaterial to the issues on trial. The two letters, one of date January 15th, 1872, from Wm. Nickels to the defendant Mooring, and the answer to the same without date, were of such character ; but these letters were both introduced by the plaintiffs and not by the defendant, and seem not to have been objected to. This fact appears in the amendments to the case and exceptions allowed and settled by the judge who presided at the trial.

The subsequent letter from the defendant to Nickels, dated November 25th, 1872, was introduced by the defendant's counsel and objected to by the plaintiffs. It was probably offered for the purpose of doing away with the impressions which might be created by the former letter from Mooring to Nickels, previously introduced by the plaintiffs. It is a family letter, and while entirely immaterial to the issue, we cannot see how it could operate in any way legally prejudicial to the rights of the plaintiffs.

The court will not reverse a judgment simply for the reason that immaterial evidence has been introduced on the trial. It must appear that such evidence was legally prejudicial to the parties' rights, or calculated to have an injurious influence upon the minds of the jury, and to mislead them in their endeavors to arrive at a correct conclusion. Thorndike vs. City of Boston, 1 Metcalf, 242; Barry vs. Bennett, 7 Metcalf, 354.

We cannot see how either of these letters could possibly bear upon the issues which were evidently in the minds of the jury when they agreed upon their verdict. They have determined as a matter of fact that the defendant Mooring had no notice of the dissolution of the partnership existing between the plaintiffs; that the said Mooring did pay the debt which he owed to the plaintiffs by the delivering of a check to Thomas N. Gautier, one of the copartners and plaintiffs. It was in view of such finding not a question of importance whether Nickels and Mooring had negotiations for a compromise or arbitration; whether Mooring had, or had not, previously admitted the justness of, or paid the account; or whether there were individual accounts existing between the several parties to the action. The question also of fraud or collusion between Gautier and Mooring has been determined. All the proofs upon which such allegations were based were considered and passed upon by the jury.

6

The court below, in its discretion, denied the motion for a new trial. This motion was made upon the minutes of the court, and two affidavits, one made by the plaintiff Nickels, and the other by two of the jurors who tried the case. Upon the trial of the cause D. L. McKinnon, a witness introduced upon the behalf of the defendant, testified as follows: " I had an interview with Mr. Nickels, one of the plaintiffs, about a receipt of Thomas N. Gautier, and told him I had a receipt for settlement, and Mr. Nickels said he supposed Mr. Gautier had as much right to settle the suit as he had.

" The following is the receipt:

" 'November 6, 1872.

" ' Received of Edwin W. Mooring, in full payment of all demands against him in favor of Nickels & Gautier, a check drawn by Van Biel & Fisk on the Fourth National Bank of the City of New York for six hundred dollars, payable to Thomas N. Gautier, or order, and dated June 15th, 1872.

" 'NICKELS & GAUTIER,

" 'In liquidation.'

" I let Mr. Nickels have the receipt, and in a few days he returned it, and said he intended to prosecute the suit."

Subsequently Mr. Nickels himself testified on behalf of the plaintiffs as follows: " I did, at the time I spoke to Mr. McKinnon, make the remark, ignorant of and in mistake of my legal rights. I afterwards, and upon reflection, concluded that Gautier had no right to give the receipt. I afterwards met Mr. McKinnon at the door of the clerk's office, and told him I would prosecute the suit. He handed me the receipt, and I copied it. When I found out my legal rights I told him the suit would go on."

The affidavit read upon motion for new trial, made by the plaintiff Nickels, substantially restates the evidence he had before given on the trial upon the subject of his ignorance of his legal rights at the time he made the admission to

McKinnon, and alleges that he is informed and believes that the jury in finding their verdict for the defendant did rely upon his said admission as testified to by McKinnon. Baker and Rawls, the two jurors, allege in their affidavit that in coming to a conclusion as to what their verdict should be in the case, such admission of Nickels had " much weight with them in forming their verdict, and not being instructed by the court that an admission made by a party in ignorance and mistake of his legal rights is not binding, they gave full validity to the receipt."

There is no claim that there was newly-discovered evidence. After the evidence of McKinnon had been taken, Nickels, the plaintiff and copartner, was examined as a witness in his own behalf as to the very admission to which McKinnon had testified, and had made his full explanation, that it was uttered in ignorance of his legal rights. The proof was before the jury as fully and particularly as it was possible to be presented, and they must have considered it in coming to a final conclusion. Baker and Rawls, as jurors, were aware of the explanation which had been given by Nickels, because they say that " not being instructed by the court," &c., they gave full validity to the receipt. Had the counsel for the plaintiffs desired any instruction from the court to the jury on this subject, he had opportunity to obtain it; having neglected so to do at the proper time, he cannot now be allowed a new trial for the purpose of trying the experiment. However, it makes little difference whether the admission was made in ignorance of legal rights or not; there is no proof that by the terms of the dissolution of the partnership Gautier was not, equally with Nickels, entitled to receive and receipt for demands due the firm. The debt had been settled by Mooring with Gautier, one of the copartners and plaintiffs, and a receipt in full, about the validity of which there is no question, had been given in the name of the firm. Under such a state of

facts one copartner has the right to settle demands and give receipts to bind the firm, even after dissolution of the copartnership. Story on Partnerships, 528; Granger vs. McGilvra, 24 Ill., 152.

We cannot see that the charge of the court to the jury was wrong. It goes in some particulars, perhaps, beyond the necessities of the case under consideration, and touches upon subjects which seem not to have been material to the issues, but it contains nothing which in our judgment tends to mislead the jury. The first part of such charge to which an exception was taken is in the following words: "If, however, it appears to you from the evidence that all debts were assigned and transferred to Nickels as his property, any debtor who had notice of this would be bound to make payment to Nickels alone, and if he paid anybody else he would be obliged to pay the money over again."

There is no evidence in the record that this debt, or any debt due to the firm of Nickels & Gautier, had been assigned or transferred to Wm. Nickels. On the contrary, Nickels himhimself testifies: "The debt belongs to the firm, and was never assigned to me." The notice of the dissolution of the copartnership simply announces that the firm is dissolved by mutual consent, and that the accounts and business will be settled by Nickels.

The second exception to such charge was to the following language: "The obvious duty of all agents is that of keeping exact accounts of their doings, and particularly of all pecuniary transactions. After a reasonable time has elapsed, you will presume that such an account was rendered, accepted, and settled, otherwise any agent might always remain liable to be called upon for such account."

There was evidence tending to show that Nickels, who was the father-in-law of the defendant Mooring, was his agent for some time.

Mooring testifies that he was captured in "September,

1864. After that time Mr. Nickels was my agent. I was absent eight months before my return. Mr. Nickels had large amounts of my money in his hands; can't say how much, belonging to me; can't approximate; several thousand dollars. He did not have less than thirty thousand dollars."

In relation to such agency the plaintiff Nickels testified: " I was agent for Mooring for part of time the accounts were kept; can't designate the time. I had some Confederate money of Mooring's in hand; can't state the amount. I suppose I have of his in hand now two or three thousand dollars. I was agent for him at different times. Sometimes could not satisfy him, and I would cease. Can't say when agencies commenced or closed; have nothing to show this."

This charge of the court bore directly upon this evidence of agency, and as it is admitted by the counsel for the plaintiff in his agreement " to be correct in the abstract," we conclude that it might, in the consideration of the evidence given by the jury, have a " practical application to the case before the court."

The request of the plaintiffs' counsel that the court charge the jury on the several points set out in the record was substantially complied with. It seems to us that the charge was full and explicit. It is not necessary that the court in their charge to the jury should use the exact language of the counsel in such request. It is sufficient that the substance be embodied in the charge, and the material legal propositions presented clearly to the jury.

The judgment must be affirmed, and such is the order of the court.