## KEEP v. INDIANAPOLIS & ST. LOUIS R. Co.*

## KEEP v. UNION RAILWAY & TRANSIT Co.*

*(Circuit Court, E. D. Missouri.  February 13, 1882.)*

1. TRIAL OF CAUSES OF A LIKE NATURE AT THE SAME TIME—REV. ST. § 921.

   Federal courts have authority to order causes pending before them of a like nature, and in which substantially the same questions are involved, though against different defendants, to be tried at the same time, even where, in consequence, the defendants will be brought into antagonism.

2. SAME—JUDGMENTS.

   Where causes, one of which sounds in tort and the other in contract, are tried at the same time, separate judgments may be rendered in each.

3. PRACTICE—JOINT WRONGS—SEPARATE SUITS.

   Where several tort-feasors are each and all liable for the same wrongful act, a separate suit for damages may be maintained against each of them.

4. COMMON CARRIER—NEGLIGENCE—MOTIVE POWER.

   A common carrier is liable to a passenger whom it has contracted to convey to a particular point, if he is injured while being so conveyed through the negligence or unskilfulness of employes of a corporation with which such carrier has contracted for motive power.

5. LIABILITY OF PARTY FURNISHING MOTIVE POWER—NEGLIGENCE—UNSKILFULNESS.

   In such cases the corporation furnishing the motive power is also liable to the passenger if the injury is sustained through the direct negligence or unskilfulness of its employes.

Motions for a New Trial.

Separate judgments having been rendered against each of them, both of the defendants in the above-entitled causes move for a new trial. The motion of the Union Railway & Transit Company assigned as error:

(1) That the verdict is unsupported by the evidence, but is contrary thereto, and is against the evidence and the weight of evidence. (2) That the verdict is for the plaintiff, whereas it ought to have been for the defendant. (3) That the court erred in refusing to give the instructions asked by defendant at the close of plaintiff's case. (4) That the court erred in refusing to give the instructions asked by defendant at the close of the evidence in the case. (5) That the court erred in giving the instructions which were given by the court to the jury. (6) That the court erred in its instructions given to the jury. (7) That the court erred in its instructions given to the jury after they retired, and in answer to their inquiry to the effect that "if each company is at fault the same amount of damages should be rendered against each." (8) That the court erred in admitting improper and illegal evidence against the objection of the defendant; the court erred in rejecting legal, competent, and

*Reported by B. F. Rex, Esq., of the St. Louis bar.

material evidence offered by the defendant. (9) That the court erred in consolidating the above-named case of *Henry V. Keep* v. *Union Railway & Transit Co. of St. Louis* with the case of *Keep* v. *Indianapolis & St. Louis R. Co.*, and in trying the same together. (10) That the verdict after consolidation should have been a joint verdict, and the judgment joint. (11) That the damages are excessive.

The motion of the Indianapolis & St. Louis Railroad Company sets forth substantially the same assignments of error as that of the Union Railway & Transit Company, with the exception of the third, fourth, ninth, and tenth assignments, which are omitted.

For a report of the trial of said cases see 9 FED. REP. 625 *et seq.*

L. B. *Valliant* and *Joseph Dickson*, for plaintiff.

*John T. Dye*, for Indianapolis & St. Louis Railroad Company.

*S. M. Breckenridge*, for Union Railway & Transit Company.

TREAT, D. J. At the calling of these cases they were consolidated for purposes of trial—that is, the court ordered that they should be tried at the same time, before the same jury; yet each case to be treated as distinct, and requiring a separate verdict. Such has been the uniform practice of this court for a quarter of a century, commencing with the administration of Justice Catron, of the supreme court, (Wells and Treat, associated,) to the present time. Such practice was based on the act of July 22, 1813, (now section 921, Rev. St.,) which is as follows:

"When causes of a like nature or relative to the same question are pending before a court of the United States or of any territory the court may make such orders and rules concerning proceedings therein as may be conformable to the usages of courts for avoiding unnecessary costs or delay in the administration of justice, and may consolidate said causes when it appears reasonable to do so."

It often happened, under the land litigations prevalent here from 25 to 30 years ago, that from 50 to 100 cases in ejectment would be brought by one plaintiff against different tenants in possession, the main subject in controversy being the plaintiff's title. Instead of trying each of said cases separately, involving one or two weeks' time each, and resting on the same evidence as to title, the court could order all to be tried at once, so that the court could determine whether the plaintiff had a right of recovery as against the defendants who claimed under a common title adversely.

If the plaintiff recovered, a separate verdict was rendered against each of the defendants as to damages, and the particular premises occupied by him; and if the plaintiff failed, a separate verdict was

rendered in favor of each defendant, with costs. Like practice has prevailed here in all cases within the provision of the act of 1813 whenever the court's attention was directed to the subject.

The cases under consideration fall clearly within the practice thus long established; and this is the first time in 25 years that it has been disputed. It must be said, however, that there may be a difference between the consolidation of cases to be tried as one case, and the trial of separate cases before the same jury at the same time. Many of the authorities and text-writers cited do not note the distinction, and few make any reference to the act of 1813.

From facts and circumstances brought to the attention of the court, it was obvious that the same question was involved in each of these two cases, viz., whether the plaintiff sustained damages through the negligence of one or the other of the defendants, and if so, whether one or both were responsible therefor. If the cases were tried, one after the other, the same evidence would have to be presented, to the unnecessary delay of business. No exception was taken to the order of the court, and, if it had been, it would have been promptly overruled. The reason and justice of the act of 1813 must be apparent to all who desire the prompt determination of litigated cases, without useless costs and expense.

It is contended that by this practice the two defendants were brought into antagonism with each other, as well as with the plaintiff, whereby an unnecessary burden, attended with some confusion, was thrown on the transit company. But so, in like cases, it always became the duty of the court to discriminate, as it did in these cases, between the respective duties and liabilities of the defendants.

The cases were peculiar in several respects. The wrong done occurred under such circumstances as at first blush to make it a question between the defendants *inter sese* as to which was in fault. To the plaintiff, who could have but one satisfaction, it was immaterial whether one only or both defendants were responsible to him. As to the liabilities of the defendants *inter sese* he had no concern. He had a right of recovery against both, (as held,) and if either paid therefor it could adjust with the other any controversy which might arise between them.

The principal facts were that plaintiff purchased a through (coupon) ticket from New York to the city of St. Louis; the last coupon being over the Indianapolis & St. Louis Railroad Company from Indianapolis *to St. Louis.* That coupon did not authorize the contracting party or parties to leave the plaintiff in East St.

Louis, to find his way over the bridge and through the tunnel to the St. Louis depot as best he might. Some one was responsible for his safe transfer to and delivery at the St. Louis depot, involving the bridge and tunnel transfer.

It is contended earnestly that the Indianapolis & St. Louis Railroad Company was an intermediate road between New York and St. Louis, whose terminus was at East St. Louis, and although its conductor took up the terminal coupon, and gave a bridge and terminal ticket, that in doing so it acted only as the agent of the transit company, its own responsibility terminating at its station in East St. Louis; that from that point the transit company became the connecting and terminal road. To this there are two objections: *First*, the terminal coupon was from Indianapolis to St. Louis, over the Indianapolis & St. Louis Railroad; and, *second*, that the accident happened before that railroad company actually reached its station or depot at East St. Louis, where it would have delivered its passengers if bound to the latter place. Besides, it had its arrangements with the other defendant for hauling its cars over the bridge and through the tunnel; the latter furnishing merely the motive power. The trains were not taken up at East St. Louis; there was no transfer of passengers there; the train was a through one. Each through passenger retaining his seat was to be landed at the St. Louis depot, through the operation or agency of the contracting party or parties.

Whose duty was it on the arrival of the train at East St. Louis to forward the same? Had the obligations of the Indianapolis & St. Louis Railroad, under the circumstances, then ceased, and all the common carrier's obligations thereafter been devolved on the transit company? In that connection the court received written evidence as to the corporate character of the transit company, and its contracts with the defendant railroad. It ruled, as a matter of law, that for all the purposes of these suits the transit company was the agent of the railroad, bound to haul the latter's trains, merely furnishing the motive force and managing the same. Hence, the railroad was a common carrier, responsible for the acts of its agent.

It may be that under other facts and circumstances, and possibly under later arrangements, a different relationship legally may exist between those companies; but the court, in trying these cases, could not go beyond the record before it.

The facts were that on the arrival of the railroad train in East St. Louis, and before the same had reached the Relay depot, its locomotive was detached for the purpose of having the transit company's

engine attached.  The passengers were still in the cars.  The transit company's engine, in attempting to attach to the train, did so with such negligence as to cause the injury complained of.  The train itself should have advanced to or nearer the Relay depot before the locomotive was detached; and, on the other hand, the transit engine, in connecting, should have done so without thrusting the train across the track of another moving train.  Hence, as stated in the charge of the court, the railroad company was bound to deliver the plaintiff safely, under the obligations of a common carrier, in St. Louis, and was responsible for whatever injuries were caused by the negligence of its agents.  As to the transit company, though under its contracts with the defendant it was its agent, yet if in the course of its employment it injured, through its direct negligence, a third party, with whom it had no privity of contract, still it was answerable to him for the wrong so done.  Questions as to the pleadings are raised, drawing formal distinctions between contracts *ex contractu* and *ex delicto*, which are irrespective of the merits of the case, and which, if well taken, would have resulted at the trial in formal amendments, if required.

The question involved may be of large significance.  The many railroad trains arriving at and departing from the St. Louis depot use, under contract with the transit company, the motive power of the latter.  To whom is the passenger to be remitted for injury suffered?  He departs and arrives by his contract, not at East St. Louis, but at St. Louis, on the west side of the river.  The intermediate agency by which he is transferred to and from the St. Louis depot, so far as his contract is concerned, is not a separate contract, remitting him for redress when an injury has been sustained solely to such intermediate agency; but, as in these cases, he may, under acts of negligence, have his remedy against either or both.

The questions, sharply defined, are whether the obligations of the Indianapolis & St. Louis Railroad ceased, under the circumstances stated, when its locomotive was detached from its train at East St. Louis; and, on the other hand, whether what occurred subsequently involved a liability solely against the transit company.

As has been stated, a mixed question of fact might have been presented if the duties of the Indianapolis & St. Louis Railroad had terminated when it left its cars on the track in East St. Louis, short of the Relay depot, and if its obligations ceased only when the cars reached the Relay depot, and if in that intermediate stage of transfer the transit company undertook to haul the train, not to the Relay depot

but to the St. Louis depot.     The court thought it unnecessary to confuse the jury with such questions, but, having the charter and contracts of the transit company before it, decided, as a matter of law, that the Indianapolis & St. Louis Railroad was bound to deliver plaintiff in St. Louis; that its obligations could not be discharged by any arrangement made by it with the transit company.   It is thus that the main propositions arise.   If the transit company was a common carrier, and the obligations of the Indianapolis & St. Louis Railroad Company terminated on surrendering the cars of its train to the former, as the terminal company, then the latter was not responsible.   But it had not reached its depot in East St. Louis, and, whatever may have been its understanding with the transit company, the facts showed that the injury to plaintiff occurred during the process of discharging one motive force and attaching another.   The various authorities cited as to consolidation of causes, it is held, do not change the rule. It is true that when several causes of like nature are brought against the same defendant he may move to have them consolidated; but it does not follow that causes of like nature against different defendants may not be heard at the same time, each case being heard and determined as a distinct case, as was done in this instance.   Several text-writers and some adjudicated cases have been cited on the question of consolidation, which it is not deemed necessary to review, for most of them refer to state statutes considered inapplicable; and the two cases in United States courts are not in conflict with the views heretofore expressed.

In 1 Batchf. 151, a motion was made to have a demurrer in one of eleven cases control the others, and the court denied the motion. Ample grounds, therefore, may have existed; just as in several cases between the same plaintiff and defendant the court will, in its discretion, not compel the decision in one to determine the others, unless the rights of all can be properly heard and settled in one of the suits —the others to abide the result.

The case of *Holmes* v. *Sheridan*, 1 Dill. 351, is illustrative, where the court, instead of consolidating the cases as if only one and the same cause of action was presented, ordered the two cases to be tried at the same time, and referred to state statutes for authority.

Sections 977 and 978 of the Revised Statutes indicate that the legislation of congress was directed to the trial of cases at the same time by formal consolidation or otherwise, when the time of the court could be thereby saved, costs and expenses avoided, and the rights of the parties litigant not prejudiced.   It may seem somewhat anomalous

that each of the defendants is to be held as for the same *tort;* but there may be several *tort-feasors,* each and all of whom are liable for the wrong done. The fact that separate suits were brought does not exonerate either from his wrongful act. The plaintiff may have had, as in these cases, a cause of action against each of the defendants, and entitled to judgments accordingly if tried separately; and why not such separate judgments when tried at the same time, though one sounded in *tort* and the other in contract? The distinctions drawn as to the relative duties and obligations of the two defendants are analogous to those imposed on a tow-boat in towing a steamer, as contradistinguished from or associated with the vessel towed. Judge Swing has clearly analyzed the law in such respects in the recent case of *The James Jackson,* 9 FED. REP. 614. The motions for new trial overruled.