[No. 21019. Department Two.—May 3, 1894.]

## THE PEOPLE, RESPONDENT, v. GEORGE FEHREN-BACH, APPELLANT.

CRIMINAL LAW—EVIDENCE—CONSPIRACY—DECLARATIONS OF CO-CONSPIR-ATOR—ORDER OF PROOF—DISCRETION—PROVINCE OF JURY.—As a general rule, in order that the act or declaration of one conspirator or accomplice in the prosecution of a criminal enterprise may be considered the declaration of all, and therefore imputable to all, a foundation must first be laid *aliunde*, by proof sufficient, in the opinion of the court, to establish *prima facie* the fact of conspiracy between the parties—the question of such conspiracy being ultimately for the jury; yet, in some cases, this general rule may be departed from, and as the jury in all such cases are the ultimate arbiters of the question of conspiracy, the order of proof is in the discretion of the trial court.

ID.—LARCENY—EVIDENCE OF SIMILAR TRANSACTIONS—GUILTY KNOWLEDGE—MOTIVE.—Evidence not going to the direct guilt of defendant upon the charge of larceny, may be introduced for the purpose of showing knowledge on his part in other and similar transactions, with the view of determining his motive in the transaction in issue.

ID.—DECLARATIONS OF CO-CONSPIRATOR NOT PROSECUTED.—The declarations of a co-conspirator not prosecuted are equally admissible with those of one under indictment and prosecution.

ID.—INSTRUCTIONS.—Instructions must be taken together as a whole, and it is sufficient, if thus taken, they contain a clear and correct statement of the law properly applicable to the case.

ID.—WEIGHT OF TESTIMONY OF DEFENDANT.—An instruction is proper as to the weight to be given by the jury to the testimony of a defendant as a witness in his own behalf, if in line with like instructions approved by this court.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*Robert Ferral, J. N. E. Wilson,* and *Eugene F. Bert,* for Appellant.

No proof was offered of the existence of a conspiracy. The rule is that general evidence of an existing conspiracy should be first laid before the court, and if the defendant on trial seems not to be affected thereby, such general evidence should be excluded. (3 Chitty's Criminal Law, 1143 a; Wharton's Criminal Evidence, 9th

ed., 597, and notes.) The declarations of an alleged conspirator cannot be given in evidence against his fellow-conspirator, without first proving the conspiracy, and then only, when such declarations are made during the pendency of a criminal enterprise, and in furtherance of its object. (*People* v. *Moore,* 45 Cal. 19; *People* v. *Trim,* 39 Cal. 75; *People* v. *Geiger,* 49 Cal. 643, 650; 1 Greenleaf on Evidence, sec. 111; 1 Wharton on American Criminal Law, sec. 702; *Patton* v. *State,* 6 Ohio St. 467; *Hunter* v. *Commonwealth,* 7 Gratt. 641; 56 Am. Dec. 121; 3 Greenleaf on Evidence, sec. 94; Wharton's Criminal Evidence, 9th ed., sec. 699; *People* v. *Stanley,* 47 Cal. 113, 118; 17 Am. Rep. 401; *People* v. *English,* 52 Cal. 212; *People* v. *Aleck,* 61 Cal. 137, 138; 2 Bishop's Criminal Procedure, sec. 191; *State* v. *Arnold,* 48 Iowa, 566; *Phillips* v. *State,* 6 Tex. App. 364; *State* v. *Westfall,* 49 Iowa, 328; *Miller* v. *Commonwealth,* 78 Ky. 15; 39 Am. Rep. 194; *Marwilsky* v. *State,* 9 Tex. App. 377.)

*Attorney General W. H. H. Hart,* and *Deputy Attorney General Charles H. Jackson,* for Respondent.

The proof of the conspiracy was sufficient, and the evidence of facts tending to establish the conspiracy was properly admitted. (2 Archbold's Criminal Pleading, 1843; *Queen's case,* 2 Brod. & B. 302; *Rex* v. *Hammond,* 2 Esp. 719; 2 Bishop's Criminal Procedure, sec. 227; 1 Bishop's Criminal Procedure, sec. 1248; Code Civ. Proc., sec. 1870; *People* v. *Cotta,* 49 Cal. 166; *People* v. *Estrado,* 49 Cal. 171; *People* v. *Geiger,* 49 Cal. 643.) The charge, as a whole, was fair, and to justify the judge should be read as a whole and given a natural and unstrained interpretation. (*People* v. *Daniels,* 70 Cal. 521; *People* v. *Clark,* 84 Cal. 573, 583; *People* v. *Turcott,* 65 Cal. 126; *People* v. *Herbert,* 61 Cal. 544; *People* v. *Raten,* 63 Cal. 421, 425.)

SEARLS, C.—The defendant, George Fehrenbach, was informed against with one R. E. McBurnie, for the crime of grand larceny charged to have been committed on the

1st of December, 1892, at the city and county of San Francisco, by feloniously stealing the sum of one hundred dollars in lawful money of the United States, the personal property of one Earl L. Cook.

Upon a trial defendant was convicted and adjudged to punishment by confinement for eight years in the state prison. The appeal is from the judgment, and from an order denying a motion for a new trial.

· Defendant kept what was denominated as the "Pacific Coast Clerks' Employment Bureau," at 1118 Market street, San Francisco. McBurnie, who is informed against with him, either by himself or with others, was located at 1122 Market street, and engaged in what defendant specifies as "the real estate and business chance."

Whether McBurnie was alone in the real estate business, and a man named Griffith was proprietor of the business chance branch conducted in the same office, is not clear or indeed important.

On the first day of December, 1892, Earl L. Cook had seen a notice of defendant published in a public newspaper that a collector was wanted at 1118 Market street, and called upon defendant to make inquiry, and was informed by defendant that he had a couple of places which he thought Cook could fill, that one of them was that of collector in a real estate office, but that security was required to the extent of one hundred and fifty dollars, and witness was asked if he could give it. Finding that Cook could furnish but one hundred dollars in cash, defendant undertook to arrange it for him, pursuant to which he was taken by the defendant to McBurnie, at 1122 Market street, where, after some negotiating, Cook was employed as a collector at sixty dollars per month for a term of three months, Cook depositing one hundred dollars in cash with McBurnie as security for good conduct, for which he received a note signed by McBurnie payable at ninety days.

The important question in the case is this: Was there sufficient evidence of a conspiracy between defendant

and McBurnie or between defendant McBurnie and others to fraudulently obtain possession of the money of the prosecuting witness, Earl L. Cook, to justify the admission in evidence of the declarations and acts of McBurnie, made and performed without the presence and hearing of defendant.

The general rule is thus stated by Wharton at section 698 of his work on Criminal Evidence, 9th edition: "In cases of crime perpetrated by several persons, when once the conspiracy or combination is established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise is considered the declaration of all, and therefore imputable to all. All are deemed to assent to or command what is said or done by any one in furtherance of the common object. A foundation, however, must first be laid *aliunde*, by proof sufficient, in the opinion of the court, to establish *prima facie* the fact of conspiracy between the parties, the question of such conspiracy being ultimately for the jury."

It will sometimes, however, occur that the facts from which the conspiracy is to be inferred are so intimately blended with other facts going to constitute the crime that it is difficult to separate them, and first present to the jury the evidence on which the theory of a conspiracy is founded. There are other cases which might be mentioned in which this general rule may well be departed from.

As the jury in all cases of this kind are the ultimate arbiters of the question of conspiracy or no conspiracy, the question of the order of proofs may be left with safety to the discretion of the trial court. Wharton, at section 698 a *supra*, says: " As it sometimes may interfere with the proper development of the case to require the trial to begin with proof of the conspiracy, in such case the prosecution may, on the trial, prove the declarations and acts of one made and done in the absence of the others before proving the conspiracy between the defendants, though such proof will be treated as nuga-

tory unless the conspiracy be afterwards independently established."

The present case presents a fair example of the propriety of what may be termed the exceptional course in the order of proofs. The conduct of the parties was largely of a character such as may be properly resorted to as a matter of precaution and security in the employment of subordinates.

The claim of the prosecution was that this plan was resorted to, not in good faith and for a legitimate purpose, but as a means to inveigle the prosecuting witness, and with the felonious intent of obtaining and converting his money.

The testimony tending to show defendant a conspirator consisted not only in his procuring the prosecuting witness, taking him to his co-defendant, and participating in the agreement with him whereby he was induced to part with his money, but in his subsequent conduct at intervals whenever and wherever it would seem to do most good in endeavoring to get rid of such witness and procuring possession of the note which the latter held. He it was who, at the end of three or four days after Cook was employed first, informed Cook that McBurnie did not need him and had no work for him, and endeavored to induce him to seek other employment, and at about the same time sought to engage the witness Ingalls to take the same place with McBurnie and deposit one hundred and fifty dollars, as he had already induced Sutherland to do.

All this evidence came in in the orderly sequence of time and events, and so far from being improper the course adopted by the court was apparently the only one calculated to present the case fairly to the jury as a consistent whole.

The instructions of the court to the jury upon the question of the necessity of the conspiracy being proven before the defendant could be bound by the declarations of others were all that the defendant asked, and all that the law requires.

W. C. Ingalls was called as a witness for the prosecution, and testified in substance that, on the same day that Cook went to the office of defendant he, the witness, also visited the same office, registered, and paid defendant therefor one dollar, and was told to come back in the afternoon, which he did, and was then told by defendant that he had a position as clerk in an office, doing outside work, collecting, etc., and that they required one hundred and fifty dollars. Witness could not give that much, but told him he could give sixty or seventy dollars. Defendant then took witness to McBurnie at 1122 Market street, and introduced him. A man named Tyler was also in the room, and was consulted by McBurnie, after which witness was informed the amount he could deposit was not sufficient.

Fehrenbach was present, and suggested that witness deposit eighty dollars, and then draw money on account of his wages to live upon. The witness was not willing to do this, and he and defendant left together. The witness informed defendant he was expecting some more money from the East, and would probably receive it in about a week, and was then told to come again when he received it.

At the end of say a week the witness went again to defendant's office, and in answer to an inquiry told the latter he was prepared. Defendant then introduced witness to either McBurnie or Griffith, who was in the room with defendant, and who defendant said was his clerk, and told the clerk to take witness "up to that office where they wanted a clerk." The witness is taken to the McBurnie office, introduced to Tyler, who asked him if the gentleman explained the business to him, whereupon they have a conversation on the subject of the employment, the witness proposing to deposit his money in a bank and give security, but Tyler will consent to nothing but a deposit of the money with him as security for the faithful performance by witness of his duties as a clerk.

McBurnie or Griffith (the witness was not sure which

it was) was present at this interview.  Tyler was the party who witnessed the contract between Cook and McBurnie, and whether he was a partner with the latter or a clerk does not clearly appear.

Defendant spoke of the occupants of McBurnie's office as a firm, said the firm was thoroughly responsible in every way.  McBurnie, Griffith, and Tyler had an office together, and defendant took another witness in for a like purpose, and vouched for the reliability of the firm, said the "firm was all right," etc.

To this testimony of said Ingalls objection was made, and overruled by the court, and thereafter counsel for defendant moved to strike out the testimony as to the conversation between the witness and Tyler upon the ground that it was not had in the presence of defendant, and with which the defendant had nothing to do. The objection was overruled, an exception noted, and the ruling is assigned as error.

We think the testimony was admissible for the purpose for which it was offered.  It must be borne in mind that it did not go to the direct guilt of defendant in feloniously taking the money of Cook, but was introduced merely for the purpose of showing guilty knowledge on the part of defendant in other and similar transactions, with a view of determining the motive in the transaction in issue. ,

The negotiations commenced between defendant and the witness; defendant stated the precise terms upon which the witness would be employed; that he took him to McBurnie, and they talked the matter over, Tyler being present, and the bargain was not consummated because witness did not possess the requisite one hundred and fifty dollars; that when he called again at the office of defendant and signified his readiness to comply with the terms proposed, defendant sent either McBurnie or Griffith with him to the McBurnie office, where they found Tyler, and carried on the negotiation upon the precise lines indicated by defendant.

There is some evidence that McBurnie was present.

There is also evidence in the record from which it may be inferred that Griffith, McBurnie, Tyler, and defendant filled the various relations of partner, principal, agent, clerk, and independent operators, at different times, and there was some testimony tending to show that Tyler was a conspirator with the others. This being so, the fact that he was not prosecuted with defendant and McBurnie is of no moment. The declarations of a co-conspirator who is not prosecuted are equally admissible with those of one under indictment and prosecution.

Again, the declarations of Tyler were of no importance beyond the fact that he adhered to the terms indicated by McBurnie and defendant as the basis upon which the witness would be employed, viz: upon the deposit of one hundred and fifty dollars in cash.

In any point of view which we take of the case the error assigned does not call for a reversal of the judgment. Like considerations apply to the other objections made to testimony of other witnesses.

Appellant takes excerpts from the charge of the judge to the jury, and objects to them as violative of law. The following is a fair sample: "We all know that one man cannot be charged with what another man, disconnected from him, and out of his presence and hearing, does, nor with what he says, but if the two are jointly concerned in the enterprise, then it is admissible contrary to the usual rule, and I have admitted here divers and sundry conversations and acts done by McBurnie out of the immediate presence of Fehrenbach, but it is proper to understand that they were admitted because the charge on the part of the prosecution is that they were both concerned in this act."

The argument of appellant is that this instruction was the equivalent, that a bare suggestion by the prosecution of a defendant's guilt can take the place of proof of a charge, etc. The learned counsel seems to overlook the fact that this was preliminary to the instruction which was given by the court as follows: "While I have admitted the testimony—this testimony of what

McBurnie said and did out of the immediate presence of the defendant Fehrenbach—while I have admitted it because of the claim of the prosecution that the two were jointly concerned, if you do n't believe, and are not satisfied beyond a reasonable doubt that they were both concerned and confederated in the alleged crime, you must not consider that testimony as against Fehrenbach. It is put before you only because it is a question also before you whether or not these men were jointly concerned. If you think they were—if you are satisfied beyond a reasonable doubt that they were—then the testimony of McBurnie's acts and declarations, without the immediate presence of Fehrenbach, is testimony to be considered; unless you be so satisfied, it is to be put out of the case by you."

The instruction thus taken as a whole contains a clear statement of the law properly applicable to the case, and is not subject to just criticism.

The same may be said of the strictures indulged as to other parts of the charge. They are too lengthy to quote in refutation of the objections.

The instruction as to the weight to be given to the testimony of the defendant, who was a witness in his own behalf, was in line with like instructions which have been approved by this court in repeated instances. (*People* v. *O'Brien*, 96 Cal. 171; *People* v. *O'Neal*, 67 Cal. 378; *People* v. *Cronin*, 34 Cal. 191, 195; *People* v. *Morrow*, 60 Cal. 142, 147; *People* v. *Wheeler*, 65 Cal. 77.)

The evidence was sufficient to support the verdict, and there was no abuse of discretion by the court below in refusing to postpone the trial.

The judgment and order appealed from should be affirmed.

Haynes, C., and Belcher, C. concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

McFarland, J., De Haven, J., Fitzgerald, J.