A. M. KIGHT v. AMERICAN EAGLE FIRE INSURANCE COMPANY OF NEW YORK.

170 So. 664.
Division A.
Opinion Filed July 7, 1936.
Rehearing Granted November 9, 1936.

610

*Edwin R. Dickenson* and *J. E. Williams* for Plaintiff in Error.

*Sutton, Tillman & Reeves,* for Defendant in Error.

PER CURIAM.—An action was brought by the alleged mortgagee of the property insured, on a fire insurance policy covering a building for the period from July 1, 1933, to July 1, 1934. The fire occurred July 18, 1933. The declaration in effect alleges that the property was owned by Augusta L. Gillean, and that at the time of the fire loss and at the present time the owner of the property was indebted to the mortgagee plaintiff herein in the principal sum of $4500.00 with interest thereon. Defendant's pleas in substance (1) deny that the owner of the property was indebted to the plaintiff as alleged in the declaration; (2) deny that any indebtedness of the mortgagor to the plaintiff is just and unpaid; (3) deny that plaintiff had a valid and. existing mortgage lien against the real estate or against the proceeds of the insurance; (4) aver that the true and equitable ownership of the property insured at the time of the fire was vested in John C. Sumner and aver facts in support thereof; (5) that the note and mortgage were executed as a part of a conspiracy between the plaintiff, A. M. Kight and her father, John C. Sumner, to defraud the defendant insurer, that after the placing of the note and mortgage in the name of the plaintiff, John C. Sumner did cause the property to be burned for the purpose of collecting the insurance, all with the knowledge and consent of the plaintiff, A. M. Kight; (6) that the true ownership of the note and mortgage is in John C. Sumner; (7) that at the time of the execution of said policy and at the time of said fire, the said Augusta L. Gillean was not the sole and

unconditional owner of the said property, but that she held the same merely as naked trustee, for one, John C. Sumner; that plaintiff, A. M. Kight, had full knowledge of the said facts and consented to the same, but that the said plaintiff did not notify this defendant of the said facts"; (8) that the valued policy law is not applicable in this case, for the reason that a short time preceding the fire there was removed from said building all plumbing fixtures, thereby greatly depreciating the value of the property, and "that at the time of the said fire, the value of the said property did not exceed the sum of One Thousand Dollars ($1,000.00), and that if it is liable at all, it is only liable for the actual loss and damage caused by fire."

The plaintiff was a married woman but, having been divorced, her husband was stricken as a plaintiff in the cause.

When the case was called for trial, counsel for the defendant announced "that there are two cases set for trial today, the same plaintiff in each case, but two separate defendants and we represent both defendants. Both suits involve one fire occurring to one building in two different sections, or probably two buildings joined. The defenses are the same. The testimony will be the same and we request the Court to try these cases together. * * * The plaintiff is represented by the same counsel also."

Counsel for the plaintiff objected:

"1. Because the buildings were not joined together, but are separate buildings on separate parcels of land.

"2. Because the parties are not the same.

"3. Because the facts in the two cases are not such facts as justify a consolidation under the statutes of this state in law cases.

"4. Because these two cases are not two suits of the

same obligation or contract as provided for in Section 4224 of the compiled General Laws of Florida.

"BY THE COURT:

"The Court will grant the motion to try the cases together.

"To which ruling the plaintiff then and there excepted.

"BY MR. REEVES:

"The way I understand, your Honor did not consolidate but will try them together.

"BY THE COURT:

"Correct."

It thus appears that the two cases were *not consolidated,* but the court granted "the motion to try the cases together."

"A consolidation of actions is to be distinguished from the trial of several actions together, for an actual consolidation involves the union of several actions into one which is tried as such, while where several actions are tried together, although there is but one trial, the identity of the actions is preserved and separate verdicts and judgments rendered." 1 C. J. 1121.

See Lumiansky v. Tessier, 213 Mass. 182, 99 N. E. 1051, Ann. Cas. 1913E, 1049; Keep v. Indianapolis & St. Louis R. Co., 10 Fed. 454, 456; Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 36 L. Ed. 706; 1 R. C. L. 361.

"A court may order several causes pending before it to be tried together where they are of the same nature, arise from the same act, event, or transaction, involve the same or like issues and depend largely or substantially on the same evidence and a joint trial will not give one party an undue advantage or prejudice the substantial rights of any party. This is true not only where the parties in the several actions are the same, but also where some of the parties are different, as where the actions were brought by the same plaintiff or plaintiffs against different defendants or

by different plaintiffs against the same defendant or defendants." 64 C. J. 35.

See Yardley v. Rutland R. Co., 103 Vt. 182, 153 Atl. 195, 6; Sun Insurance Office v. Scott, 284 U. S. 177, 52 S. Ct. 72, 76 L. Ed. 229; Home Ins. Co. of New York v. Scott, 46 Fed. (2nd) 10.

"The only effect of an order providing that several actions shall be tried together is to consolidate the cases for the purpose of trial; it does not merge the several actions into one; each case retains its distinctive characteristics and remains separate in respect of docket entries, depositions previously taken in one cause, verdicts, findings, judgments, proceedings to obtain an appellate review, and all other matters except the one of joint trial; and if there is error in one case only, it is fatal to that judgment in that case only. Likewise, the trial of two or more cases together by consent of all the parties does not merge the cases into one." 64 C. J. 37.

Though the two cases were tried together, the pleadings, issues, evidence, verdicts, judgments and records in the two cases are similar but distinct and several; separate writs of error and separate records are taken to this court in the two cases. There is nothing to indicate that any of the parties were prejudiced or injured by the trial of the two cases together; and no error appears in the order requiring the two cases to be tried together notwithstanding the objections of the counsel who represented the plaintiff in each case.

It is contended in the second question that under a plea of conspiracy between plaintiff and a third person, not a party to the suit, the introduction in evidence of statements made by such third person, not in the presence of the plaintiff,

without first proving the existence of the conspiracy, would be unauthorized and hence erroneous.

The fifth plea set up as a defense that plaintiff is not the owner of the note and mortgage; that there was no consideration for issuance of the same; but that said note and mortgage were issued as part of a joint conspiracy between plaintiff and her father, John C. Sumner, to defraud defendant; that after placing the note and mortgage in plaintiff's name, John C. Sumner caused the property to be burned so as to collect the insurance, all with plaintiff's knowledge and consent.

The first assignment of error argued under this question is the ruling of the court on the following question asked James Campbell, a negro.

"Q. Did Mr. Sumner tell you whether or not he owned that property?

"A. Yes sir, he said that he owned it.

"By Mr. Dickinson:

We object to that question because it is hearsay. Mr. Sumner is not a party to this suit, and he has not been a witness in this case, and it is not proper for this witness to testify what a third party told him as against the plaintiff in this case.

"By the Court:

"I overrule the objection."

Silas Kight was asked the following question which was objected to by counsel:

"Q. Did Mr. Sumner ever make any statement to you about whether or not he carried the title to his property in his own name or in other people's names?

"A. Yes sir.

"Q. Approximately when was that conversation?

"By Mr. Williams:

We object to that because Mr. Sumner is not a party to this suit, and the testimony called for is hearsay, and is immaterial and irrelevant in this case.

"By the Court:

"Objection overruled."

The record shows that at the time objection had been made to these questions, they had already been answered by the respective witnesses. The questions were objected to on the ground that the evidence sought to be elicited thereby was incompetent. The court overruled the objections, without stating the grounds for its decision. If the court overruled the objections on the ground of competency and not on the ground of delay, the question is preserved for review. Lucas v. United States, 163 U. S. 612, 16 Sup. Ct. 1168, 41 L. Ed. 282. But the ground upon which the objections were overruled was not stated; and as the objections were made after the questions had been answered, they came too late, and the questions cannot be considered here. 26 R. C. L. 1046, Sec. 55.

Objection was made to a question asked C. O. Mason as to what, if anything, he knew about the ownership of the property, on the grounds that (1) it was hearsay, (2) it called for immaterial and irrelevant testimony, (3) that Mr. Sumner, not being a party, any statement he may have made as to ownership of the property would not bind plaintiff and (4) because the deeds and muniments of title are the best evidence of ownership. The objections were overruled.

Objection was made to a question asked Silas Kight as to whether he knew who claimed to own that property, on the grounds that it was immaterial and irrelevant and that

the witness did not know anything about it. The objection was overruled.

In reply to a question asked Silas Kight, in whose name Mr. Sumner carried his property, he answered that it was in the names of the wife, Mrs. Minnie Sumner, and the daughter, A. M. Kight. Motion was made to strike this testimony on the grounds that it was hearsay, and that it was immaterial and irrelevant. The motion was denied.

Objection was made to a question asked R. G. Trezevant as to what, if anything, Sumner told him with reference to his properties, on the grounds that (1) it was immaterial and irrelevant, (2) it was hearsay, and (3) the conversation inquired of was before title to the property was ever acquired by plaintiff or sold to Mrs. Gillean and the mortgage taken back, and while title thereto was in strangers to plaintiff's entire family. The testimony was admitted by the court as tending to show that John C. Sumner carried property in the names of several members of his family instead of his own. The purpose in admitting the testimony was to show that the property was John C. Sumner's instead of Mrs. Gillean's.

At the time when the questions objected to and the testimony sought to be stricken were allowed in evidence, there was before the jury the following testimony tending to show a conspiracy between plaintiff and John C. Sumner to place the legal title to the property in plaintiff's name and to burn the property for the insurance.

Augusta L. Gillean, who held record title to the property, testified that she was a sister-in-law of John C. Sumner and Mrs. John C. Sumner. The plaintiff, A. M. Kight, admitted that she was the daughter of John C. Sumner and that he looked after her property for her. There was testimony that Augusta L. Gillean procured the property from

A. M. Kight by swapping a lot and giving back a $4500.00 mortgage on the property therefor. This property was given plaintiff by her mother, Mrs. Minnie Sumner, to insure her college education. Plaintiff turned her property over to her father, John C. Sumner, to trade for something as a down payment with subsequent installment payments, in order that she might have something coming in, because she had given up going to college. Augusta L. Gillean testified that she did not have sufficient income to pay the interest and taxes on the property, and that she was going to let the note ride as it was in the family anyway. When Mrs. Gillean purchased the property, she did not ascertain whether there were any unpaid taxes against it, and she did not have a lawyer examine the abstract of title. After the purchase, no gas or electricity was turned on and no telephone was installed in the property. J. R. Campbell testified that John C. Sumner tried to trade him two policies of insurance on the property after the fire had occurred.

It is necessary in all cases that there be proof of conspiracy else evidence of the acts and declarations of one member is inadmissible against the other parties to the conspiracy. 3 Encyclopedia of Evidence 424.

"Before evidence of the acts and declarations of persons not parties to the action can be properly received in evidence, in cases of this character, the common unlawful design should be clearly proved, as a condition precedent to receiving evidence of such acts and declaration at all. Evidence which is merely admissible on the question of the common illegal purpose, is not sufficient. On the trial of almost every issue of fact, evidence is admissible which, taken by itself, falls entirely short of establishing the fact to be proved, but which, taken in connection with other competent evidence, which is equally insufficient of itself

to establish the fact in question, satisfactorily establishes the fact to be proved .* * *.

"The common purpose, as before remarked, must be clearly proved. Evidence wihch might be sufficient to submit to a jury on a question proper to be submitted to them, will not answer the requirement. It should be so strong as to make it their imperative duty to find in the affirmative, if the question were to ·be submitted to them, and where the court would set their verdict aside in case they did not so find." Jones v. Hurlburt, 39 Barb. (N. Y.) 403, 409.

The question whether or not proof of the conspiracy shall precede the admission of evidence of the declarations of supposed conspirators is merely one of the order of proof, which is largely in the discretion of the trial court. People v. Daniels, 105 Cal. 262, 38 Pac. 720; People v. Rodley, 131 Cal. 240, 63 Pac. 351; People v. Fehrenbasch, 102 Cal. 394, 36 Pac. 678; Commonwealth v. Rogers, 181 Mass. 184, 63 N. E. 421; Miller v. Barber, 66 N. Y. 558.

Evidence of the facts and declarations of an alleged conspirator are admissible after testimony has been given which prima facie tends to prove the existence of a conspiracy or from which it might reasonably be inferred. State v. Moore, 32 Ore. 65, 48 Pac. 468; Pacific Live Stock Co. v. Gentry, 38 Ore. 275, 61 Pac. 422, 65 Pac. 597.

The purpose of these questions was to show that John C. Sumner was the real or beneficial owner of the property that burned and also of other property which stood in the names of his daughter and his wife, and that his daughter and wife were merely holders of the naked legal title to the property. Under the circumstances of this case, we cannot say that the trial court erred in his rulings on these questions.

The plaintiff in error further contends that it was error for the trial court to allow the admission in evidence of an uncertified list of deeds and mortgages executed by or to the plaintiff, as well as to third persons not parties to the suit, and not related in any manner to the property involved in the litigation, which list was sworn to by a secretary of the abstract company.

The defendant contends that the purpose of introducing this evidence was to show that the plaintitff's father, John C. Sumner, carried all his property in the names of different members of his family.

No matter for what purpose theey were introduced, such introduction violated the "best evidence" principle. They were introduced for the purpose of proving something that appeared on the face of the originals, and in the absence of a showing that they were the best evidence obtainable, they would be inadmissible. There was no proof offered that the original instruments could not be produced; neither was there any proof that any demands had been made on any one to produce them, nor that they were in any way destroyed or misplaced. Neither was it shown that certified copies of the deeds and mortgages could not have been produced from the office of the clerk of the circuit court.

This list of deeds and mortgages was clearly inadmissible for any purpose in the absence of a showing that they were the best evidence obtainable. See Bell v. Kendrick, 25 Fla. 778, 6 So. 868; Florida Finance Co. v. Sheffield, 56 Fla. 285, 48 So. 42; Atlantic Land & Improvement Co. v. Lee, 93 Fla. 579, 112 So. 549.

For this reason, the judgment should be and is hereby reversed.

Reversed.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

PER CURIAM.—Defendant in Error, the American Eagle Fire Insurance Company of New York, filed a petition for rehearing of this case, the petition stating as grounds for seeking the rehearing: (1) That the Court overlooked the fact that the error, if any, in admitting in evidence the uncertified list of deeds and mortgages executed by or to the plaintiff, as well as to third persons not parties to the suit, sworn to by the Secretary of the Abstract Company, was harmless error; (2) that the Court overlooked a long line of Florida decisions beginning with Nickels v. Mooring, 16 Fla. 76, holding that a judgment will not be reversed simply because immaterial evidence was introduced at the trial; (3) that the Court overlooked the harmless error statute, Section 4499 C. G. L. and (4) that substantial justice has been done and the judgment should not be reversed because of an admission of evidence.

The petition for rehearing was granted.

In this case, the sheets of paper containing a list of what purported to be all of the deeds and mortgages both to and from plaintiff for a certain period of time were introduced in evidence over the objection of counsel for plaintiff. Objection was made to the admission in evidence of all of these papers, except those relating to the property involved in this suit, on the grounds that they were not the best evidence and because they were immaterial and irrelevant. The trial court admitted them in evidence after the Secretary of the Abstract Company testified that he had a list of the deeds and mortgages, both to and from the plaintiff, covering the period of time from 1930 to the date of the trial, compiled at the request of defendant's counsel.

There were 21 separate instruments in the purported abstract. Their introduction in evidence was an attempt to prove something which the face of the instruments themselves would show, and was a clear violation of the best evidence principle.

In the brief of Defendant in Error, it is said, in substance, that since counsel for plaintiff made no objection to the admission in evidence as to that part of the purported abstract relating to the property involved in this litigation, introduction of the remaining portions of the purported abstract was harmless, because plaintiff did not show where it prejudiced her rights.

The harmful effect of admitting the purported abstract in evidence may be seen by understanding that this was an action on a fire insurance policy. One defense was that the property was burned for the insurance, and in order to prove this defense, the defendant attempted to show that plaintiff's father, John Sumner, was the beneficial owner of the property, and that he carried all of his property in the names of either his daughter or his wife, and also traded property in their names. Another defense was that procuring insurance in this manner was a fraud upon the Company because John Sumner was the real beneficial owner. In order to show that title to the property said to have been owned beneficially by John Sumner was in fact held by his daughter and wife, it became necessary to show certain transfers of property. There is no better evidence of the transfers than the instruments themselves. If these cannot be produced, upon proper showing, certified copies of the deeds or mortgages may be introduced as *prima facie* evidence of the instruments or their due execution. Article XVI, Section 21, Florida Constitution. The original deeds or mortgages must be accounted for before certified copies

may be entered in evidence. See Johnson v. Drew, 34 Fla. 130, 15 So. 780, 43 A. S. R. 172; Florida Finance Co. v. Sheffield, 56 Fla. 285, 48 So. 42, 23 L.R.A.(N.S.)1102,16 Ann Cas. 1142. The purpose for which these leaves of paper, purporting to be an abstract, were introduced in evidence was not made plain by counsel for defendant at the time of their introduction, so it may now be assumed that they were introduced for any possible effect they might have on the jury. The original deeds and mortgages should have been produced, but if they could not, certainly certified copies of them could have been obtained from the clerk of the circuit court.

It is contended now, for the first time, that plaintiff, upon being recalled to the witness stand, testified as to each piece of property contained in the purported abstract, thus rendering the error, if any, due to admission of the purported abstract, harmless. The record has been re-examined with a view to learning whether the error was rendered harmless by plaintiff's later testimony. It is true that plaintiff testified in some respect as to numerous pieces of property, and her admission as to facts against her interest would be binding upon her; but in that later testimony, the descriptions of the lots and the testimony as to the circumstances of each transaction was too vague and indefinite to be equivalent to the descriptions and the information contained in the purported abstract. For example, the property in Westmoreland Pines Subdivision was identified as follows:

"Q. Do you own any property in Westmoreland Pines Subdivision?

"A. I did own some property there but I traded them off to various people.

"Q. To whom did you trade it?

"A. I do not remember right at the present time.

"Q. Is it not a fact that on February 1st, 1933, that you gave to your mother all of the lots that you had in Westmoreland Pines?

"A. Not all of them.

"Q. You gave her a deed to some of them?

"A. Yes, sir, I gave them to her for a piece of property that she had that I thought was worth as much.

"Q. What piece of property was that?

"A. I could not remember at the present time. She had something I wanted and I had something she wanted and it was worth about the same and we traded.

"Q. In February, 1933, you cannot remember that far back to know what you traded for?

"A. I could not keep all that in my mind. I would have to have a mighty good one if I did."

All through plaintiff's testimony, upon being recalled, there is this quality of indefiniteness and uncertainty typical in the above quoted testimony. There was not that certainty in her testimony that was found in the purported abstract. Neither did plaintiff's testimony give all the facts that were set out in the purported abstract as to description of the property, date of the deed or mortgage, date of recording the instrument, and all the parties involved in the transfer or incumbrance of the property.

It is certain that error was committed in admitting the purported abstract in evidence. We cannot say, as is contended by defendant in error, that the testimony of plaintiff, upon being re-examined, completely nullified the error committed by the admission, as there was considerable ground covered by the purported abstract that was not

covered by her testimony, and the jury might have been unduly influenced by this improperly admitted evidence in rendering its verdict. Therefore the former judgment of reversal in this case is adhered to on rehearing.

Reversed.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and TERRELL, and BUFORD, J. J., concur in the opinion and judgment.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.