JAMES JOHNSON, APPELLANT, VS. GEORGE F. DREW, APPELLEE.

1. A plea on equitable grounds may be interposed in an action of ejectment, provided it sets up matters not available as a legal defense, and which would authorize the defendant to obtain relief in equity by injunction against the judgment in ejectment.

2. It will not be error to refuse an application to file a plea on equitable grounds if the defense sought to be set up in the plea can be made available as a legal defense under the general issue.

3. A patent purporting to have been issued by the land office under authority of law, and regular on its face, is evidence of a good conveyance of the land therein described; but it may be shown in an action of ejectment for the possession of the land that the land office department did not in fact have authority to issue the patent, and that the land undertaken to be conveyed had never been subject to disposition by that department, or, if so, had been withdrawn from sale before the patent issued. In such a case the patent will be void, and its invalidity may be shown as a defense in an action at law for the possession of the land.

4. A patent issued by the land office department for any portion of the public lands is at least *prima facie* evidence of the authority of that department to dispose of the land patented, and all matters passed upon and properly coming within the jurisdiction of the land department in granting the patent, are conclusive until set aside by proper direct proceedings.

5. The right given by the act of Congress (Chapter 214, acts of 1884) to a settler upon a military reservation when entitled to make

a homestead entry, to enter one hundred and sixty acres in a body, is dependent upon the fact that said land was subject to entry under the public land laws at the time of its withdrawal; and when a settler upon a portion of a military reservation, without any certificate of entry or showing any privity with the title of the government other than that of bare possession and claiming to enter the land under said act, seeks to defeat a patent to the land issued by the land office department, on the ground that he was in actual possession when the patent issued, it is incumbent upon him to show that the land occupied by him was subject to entry under the public land laws at the time of its withdrawal for a military reservation.

6. A mere occupier of public land not shown to be subject to entry under any of the land laws of the United States, and who does not base a claim to such land upon any title from any source, or who does not connect himself in privity with any source of title, is in no condition to attack a patent issued by the land office apparently valid and regular on its face.

7. The original record of a deed in the record book of deeds is not evidence to show a conveyance of the land described in the record book. Section 21 of Article XVI of the Constitution makes deeds and mortgages duly recorded *prima facie* evidence in the courts of this State without proof of execution, and also certified copies of the record of deeds and mortgages that have been duly recorded shall be admitted as *prima facie* evidence thereof and of their due execution with like effect as the originals when duly proved, provided it is made to appear that the originals are not within the custody or control of the party offering such certified copies, but the Constitution has not made the original record itself, without any other showing, evidence of deeds or mortgages.

Appeal from the Circuit Court for Hillsborough county.

The facts of the case are stated in the opinion of the court.

*Lucius Finley* and *S. Y. Finley* for Appellant.

*Sparkman & Sparkman* for Appellee.

MABRY J.:

Appellee brought ejectment againt appellant to re-cover possession of lot eight (8) of section nineteen, township twenty-nine south, of range nineteen east, and lot seven (7) of section twenty-four in township twenty-nine south, of range eighteen east, containing in all 40 19-100 acres, and obtained judgment.

The defendant below filed the plea of not guilty, and a plea on equitable grounds. A demurrer was sustained to the latter plea, and an amended plea on same ground was offered to be filed, but was refused by the court for the reason assigned, that it presented no equitable defense. A consideration of the merits of the amended plea will suffice to dispose of the errors assigned in the rulings of the court in reference to the equitable pleas.

The amended plea offered to be filed alleges in substance that the land sued for was situated within the Fort Brooke Military Reservation of the United States, at Tampa, Florida, and that the plaintiff claimed title to the same by virtue of a patent predicated upon a pretended location and entry on the land made in the United States Land Office at Gainesville, Florida, by Louis J. Brush, plaintiff's grantor, with Valentine scrip; that at the time of the said location and entry of said land, and at the time of the issuance of the patent to Brush, the defendant was in actual occupancy and possession of said land, and was residing upon it with his family as a home; that defendant had settled upon and was in the actual possession of said land, it being a portion of said Fort Brooke Military

Reservation, prior to the location of said reservation in the year 1877, and prior to the location of said reservation upon said reservation in the year 1878, and had settled thereon prior to January first, 1884, in good faith for the purpose of securing a home, and of entering the same under the general laws of the United States, and continued in such occupancy from a period prior to the first day of January, 1884, to the time of the approval of the act of Congress of July 5th, 1884, and is by law entitled to make a homestead entry, and to enter said land, and in equity and good conscience is entitled to the exclusive right of possession thereof. That at the time of the said pretended location and entry of said land with Valentine scrip by plaintiff's grantor and the issuance of said patent to him, said land was occupied by defendant as aforesaid, and was appropriated, and was not then, and is not now unoccupied and unappropriated public land of the United States, as required, specified and limited by the act of Congress in such case made and provided in authorizing the location of said scrip; that at the time of the said pretended entry of said land and the issuance of said patent to plaintiff's grantor, said land had not been surveyed under the direction and control of the General Land Office of the United States, and that said entry was made upon tracts less than the subdivisions provided for in the United States land laws and did not conform to the general system of the United States Land Survey; that at the time of the entry of said land with Valentine scrip and the issuance of the said patent to the plaintiff's grantor, said land was within the jurisdiction of the War Department of the United States, and not within the Land Department. And defendant alleges that said patent

is in fraud and violation of the acts of the Congress of the United States and of the rights of the War Department; and that said patent is void and vests no legal or equitable title, nor right of possession in and to said land in plaintiff; and that defendant by virtue of said acts of Congress, and in equity and good conscience, is entitled to the exclusive possession of the said land mentioned in plaintiff's declaration.

It will be seen by reading the foregoing plea that while the issuance of a patent on a location and entry of the land with Valentine scrip is admitted, one purpose is to impeach the patent on the ground that the land was reserved, and not subject at the time to be entered by such scrip. Before examining the allegations of this plea, reference will be made to the acts of Congress on the subject, and also to some decisions bearing on the character of the defense sought to be made by the plea.

In April, 1872, Congress passed an act authorizing the Ninth Circuit Court of the United States, for California, to hear and decide upon the merits of the claim of Thomas B. Valentine, under a Mexican grant to Juan Miranda, to a place called the Rancho Arroyo de San Antonio, situated in Sonoma county, State of California, with right of appeal to the Supreme Court of the United States. It was also provided in said act that any decree that might be obtained in favor of said claim should not affect any adverse right or title to the lands described in the decree, but in lieu thereof the claimant, or his legal representatives, might select and should be allowed patents for an equal quantity of the unoccupied and unappropriated public lands of the United States, not mineral, and in tracts not less than the subdivisions provided for in the United States

land laws, and, if unsurveyed when taken, to conform, when surveyed, to the general system of the United States land surveys; and the Commissioner of the General Land Office, under the direction of the Secretary of the Interior, was authorized to issue scrip, in legal subdivisions, to Valentine, or his legal representatives, in accordance with the provisions of the act, provided that no decree in favor of Valentine should be executed, or be of any force or effect against any person or persons, nor should any land scrip or patents be issued as therein provided, unless Valentine should first execute and deliver to the Commissioner of the General Land Office a deed conveying to the United States all his right, title and interest to the land covered by the said Miranda grant. The scrip located upon the land in question, and for which the patent issued, was the Valentine scrip authorized to be issued by the act above mentioned.

In August, 1856, provision was made by an act of Congress as follows: "That all public lands heretofore reserved for military purposes in the State of Florida, which said lands, in the opinion of the Secretary of War, are no longer useful or desired for such purposes, or so much thereof as said secretary may designate, shall be and are hereby placed under the control of the General Land Officer, to be disposed of and sold in the same manner and under the same regulations as other public lands of the United States; provided, that said lands shall not be so placed under the control of said General Land Office until said opinion of the Secretary of War, giving his consent, communicated to the Secretary of the Interior in writing shall be filed and recorded." Chapter 129, act of August 18th, 1856. This act was repealed in 1884, and provision made by the repealing act that whenever, in

the opinion of the President of the United States, the lands, or any portion of them, included within the limits of any military reservation theretofore or thereafter declared, have become or shall become useless for military purposes, he shall cause the same, or so much thereof as he may designate, to be placed under the control of the Secretary of the Interior for disposition as provided in the act, and shall cause to be filed with the Secretary of the Interior notice thereof. Provision was also made for the Secretary of the Interior to have the said lands or any part of them surveyed, or subdivided into tracts of less than forty acres, and into town lots, or either, or both, and also for an appraisement and public sale of said lands, and after offering them at public sales, to allow the remaining to be taken by private entry on conditions prescribed. This act contains the following provisors : "Provided, that any settler who was in actual occupation of any portion of any such reservations prior to the location of such reservation, or settled thereon prior to January first, eighteen hundred and eighty-four, in good faith for the purpose of securing a home and of entering the same under the general laws, and has continued in such occupation to the present time, and is by law entitled to make a homestead entry, shall be entitled to enter the land so occupied, not exceeding one hundred and sixty acres in a body, according to the government surveys and subdivisions; provided further, that said lands were subject to entry under the public land laws at the time of their withdrawal." Chap. 214, acts of 1884.

The right to interpose a plea on equitable grounds in an action of ejectment is clear, provided the matter set up in such plea will authorize the defendant to enjoin in a court of equity the judgment, should one be re-

covered against him. The facts alleged in such plea must not, however, make such a defense as is available to the defendant in the common law action, as the court in such case will be justified in refusing to allow the plea to be filed or in striking it out if filed. Dickson vs. Gamble, 16 Fla., 687; Spratt vs. Price, 18 Fla., 289; Walls vs. Endel, 20 Fla., 86; Johnson vs. Allen, 22 Fla., 224. Does the plea set up any defense, and if so, is it available to the defendant under the general issue in an action of ejectment? A patent in due form of law, sufficient on its face to convey the title to the land therein described, and purporting to have been issued by the proper officers of the government, must at least be regarded as *prima facie* valid in actions at law. Whether such a patent can be impeached in a proceeding at law, as distinguished from a suit in equity, and if so, under what conditions it can be done, has given rise to considerable judicial discussion in the courts of this country. The case of Polk's Lessee vs. Wendal, 9 Cranch, 87, if not the first, is the leading case on the subject in the Supreme Court of the United States. Without going into a discussion of the various cases on the subject since that time, it may be stated that when patents purporting to have been issued under authority of the United States government, are shown to have been issued without authority of law, as in cases where the land undertaken to be conveyed had never been subject to its control and disposition, or if so, had been withdrawn from sale when the patent issued, or had in fact never belonged to the government, such patents are void because the officers issuing them had no authority at all to make the grant. In such cases the patents are absolutely void, and their invalidity may be shown as a defense in an action at law for the possession of the land. Doolan

vs. Carr, 125 U. S., 618, and authorities cited; Knight vs. United States Land Association, 142 U. S., 161; Foss vs. Hinkell, 78 Cal., 158; Wilcox vs. Jackson, 13 Peters, 498. If the patent is not absolutely void, but voidable, then, it seems, direct proceedings will be required in a proper case and on proper proceedings to have the patent declared void. In Johnson vs. Towsley, 13 Wallace, 72, a bill in chancery to cancel a patent where two had been issued for the same land, the general doctrine that when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others until reversed in a direct proceeding, was referred to, and it was said "that the action of the land office in issuing a patent for any of the public land, subject to sale by pre-emption or otherwise, is conclusive of the legal title, must be admitted under the principle above stated, and in all courts, and in all forms of judicial proceedings, where this title must control, either by reason of the limited powers of the court, or the essential character of the proceeding, no enquiry can be permitted into the circumstances under which it was obtained." It was also said in the same case: "On the other hand, there has always existed in the courts of equity the power in certain classes of cases to enquire into and correct mistakes, injustice and wrong in both judicial and executive action, however solemn the form which the result of that action may assume when it invades private rights; and by virtue of this power the final judgments of courts of law have been annulled or modified, and patents and other important instruments issuing from the crown, or other executive branch of the government, have been corrected or declared void,

or other relief granted. No reason is perceived why the action of the land office should constitute an exception to this principle." In Steel vs. Smelting Company, 106 U. S., 447, it is said, after referring to several cases discussing the legal effect of a patent regularly issued, that "it need hardly be said that we are here speaking of a patent issued in a case where the Land Department had jurisdiction to act, the lands forming part of the public domain, and the law having provided for their sale. If they never were the property of the United States, or if no legislation authorizing their sale, or if they had been previously disposed of or reserved from sale, the patent would be inoperative to pass the title, and objection to it could be taken on these grounds at any time and in any form of action. In that respect the patent would be like the deed of an individual, which would be inoperative if he never owned the property, or had previously conveyed it, or had dedicated it to uses which precluded its sale." The case of Porter vs. Bishop, 25 Fla., 749, 6 South. Rep., 863, holds that in entries under the United States homestead laws where only questions of fact, or mixed questions of law and facts, are involved the decision of the Secretary of the Interior thereon is final, but that where by misconstruing the law, the officers of the Land Department have withheld from a party his just rights, or where misrepresentation and fraud have been practiced, necessarily affecting their judgment, the courts may, in a proper proceeding, interfere and refuse to give effect to their acaction.

The action of the land office in disposing of land subject to sale under any law regulating the disposition of the public domain, is conclusive of the legal title so far as an enquiry into all matters connected ·

with the issuance of the patent extends, and such patent is also conclusive in equity until set aside in a proper proceeding on the ground that the land officers have misconstrued the law, or that their judgment has been so affected by misrepresentation or fraud as to deprive a party of his just rights.

The Supreme Court of the United States clearly holds, as we understand it, that if the land patented was not under the control and subject to disposition of the land office, the patent is void and its invalidity may be shown in an action of ejectment to recover the land by virtue of the patent. The act of Congress of 1872 authorizing the issuance of the Valentine scrip provides that patents may issue for it for an equal quantity of the unoccupied and unappropriated public lands of the United States, not mineral, whether surveyed or not, in tracts not less than the subdivisions provided for in the United States land laws, and, if unsurveyed when taken, to conform when surveyed to the general system of the United States land surveys. The plea alleges that the land sued for and entered with Valentine scrip was situated within Fort Brooke Military Reservation, at Tampa, and at the time of said entry and the issuance of said patent to plaintiff's grantor the land was within the jurisdiction of the War Department of the United States, and not within the Land Department. It is also alleged that the patent was in fraud and violation of the acts of Congress and of the rights of the War Department, and was void, but this allegation of fraud must be taken as referring to the issuance of the patent when the land was within the jurisdiction of the War Department, and not subject to the control of the Land Office Department. As an independent allegation of fraud, it would be nothing but a legal conclusion of

the pleader.  There is also an allegation that when the entry was made and the patent issued, defendant was in possession of the land, and that it was not then, or at the time of filing the plea, unoccupied and unappropriated public land, as specified by the act of Congress authorizing the location of land with Valentine scrip. The allegation that the land was not unoccupied public land is based upon the alleged fact that defendant was in possession, but the further allegations that the land was situated within Fort Brooke Military Reservation, and at the time of the entry and issuance of the patent was within the jurisdiction of the War Department, and not within the Land Department, are sufficient, in our opinion, to show, if true, that the land officers had no authority to permit the land to be entered with the Valentine scrip.  The act of Congress in force up to July 5th, 1884, authorized a transfer of the land by the Secretary of War to the Land Department under certain conditions, and the patent alone would afford *prima facie* evidence that the proper transfer had been made before the issuance of the patent.  The allegations of the plea, if true, negative such fact and show that the land was still under the control of the War Department when the patent was issued.  Under such circumstances the land officers had no authority to issue the patent, and under the rule above announced it would be void, and subject to attack in an action at law.  The allegation that when the patent issued the land had not been surveyed, and the entry was made upon tracts less than the subdivisions provided for in the United States land laws, does not aid the plea. The scrip referred to was authorized to be located upon any unoccupied and unappropriated public land, not mineral, whether surveyed or not, but the survey, when made is required to conform to the general sys-

tem of United States land surveys. If the land was not under the control of the Interior Department, as alleged, the land officers had no authority over it, and their action in undertaking to dispose of the land was void. If it were shown that the land office had authority to dispose of the land, a question would arise as to whether or not the matter of surveys belongs exclusively to that department. Cragin vs. Powell, 128 U. S,, 691; Knight vs. United States Land Association, *supra.* Conceding that the defendant was in a condition to attack the patent, all the available defense sought to be set up by the equitable plea could, in our judgment, be relied upon as a legal defense under the general issue, and the courts did not err in refusing to allow such pleas to be filed.

So far we have considered the plea on the theory that the defendant was shown to be in a situation to attack the patent on the ground that it was void. He bases his right to the land on a settlement and occupancy of the land under the act of Congress of July 5th, 1884, and his right to make a homestead entry, and it will be observed that the rights given to the settler in the first proviso in this act is coupled with a further proviso that the land was subject to entry under the public land laws at the time of their withdrawal. The actual occupancy of the land by the defendant is alleged, as well as his right to make a homestead entry and to enter the land, but there is no distinct allegation that the land was subject to entry under the public land laws at the time of its withdrawal.

The question of defendant's right to attack the patent is involved in the further questions presented on the

trial under the general issue, and we will consider it in connection with them.

On the trial a patent for the land described in the declaration to Louis J. Brush, bearing date September 13th, 1882, was offered in evidence by the plaintiff, and objected to by the defendant, but the objection was overruled and the patent admitted in evidence. There was no error in admitting the patent. It recited that it was issued upon a location of the land in the district of lands subject to sale at Gainesville, Florida, with scrip issued by virtue of the act of Congress in 1872, in favor of Thomas B. Valentine, and was in due form. The patent was at least *prima facie* evidence of a good conveyance of the land, and, in the absence of anything to impeach it, should have been admitted in evidence. A deed from Brush and wife conveying the land to plaintiff, was then introduced without objection.

Defendant offered as documentary evidence, certified, copies of what purports to be official communications between the Secretary of War and the Secretary of the Interior, commencing in 1860, in reference to Fort Brooke Reservation at Tampa, and also the approvals of the President of the United States in 1877, and 1878, of the request of the Secretary of War in reference to said reservation. The purpose for introducing this evidence was to show that the land described in the patent was a part of the military reservation of Fort Brooke, at Tampa, when the patent was issued. On objection of plaintiff the documentary evidence was excluded and defendant excepted. Defendant then testified that he was a native born citizen of the United States, and the head of a family, and offered to show that he settled upon the land in question prior to the issuance of the patent, and was actually occupying

said land on the first day of January, 1884, and continued to occupy it up to the date of the act mentioned, and that his settlement and occupancy of the land was for the purpose of entering it under the homestead laws of the United States. The record shows that some evidence offered by defendant to show his occupancy of the land was admitted, but it also shows that the court excluded most of the testimony offered by defendant on this point. There was no effort to show that defendant had ever obtained any certificate of entry of the land from the land office, or that he had any deed or paper evidence of title of any kind to the land from any source whatever. Testimony was offered tending to show that in July, 1883, defendant made some efforts to make an application at the local land office for the land, and also consulted a party as to how he should proceed to make the application, and did in fact make an affidavit, that he was residing upon Fort Brooke Reservation, before a judge and forwarded it to Washington. The Circuit Judge refused to admit testimony offered by defendant to show occupancy of the land either before or subsequent to January first, 1884, for the purpose of entering it under the homestead laws, or otherwise, and the rulings of the court rejecting such evidence were excepted to by the defendant. This testimony offered by the defendant and ruled out by the court was objected to, among other grounds, because the defendant had not shown that he was in a situation to attack the patent offered in evidence by the plaintiff. Without considering the other grounds of objection to the testimony, or the views of the Circuit Court in passing thereon, we think the objection mentioned was good, and it is decisive of the entire defense sought to be interposed by the defendant. There is doubt whether the documentary

evidence offered by the defendant shows that the particular lots of land described in the declaration were embraced in Fort Brooke Reservation when the patent was issued, but without going into either the competency or relevancy of this evidence, we do not see how the defendant can call in question the validity of the patent, on the showing he made.

The rights given to the settler of any part of a military reservation by the act of July 5th, 1884, were upon the condition that said land was subject to entry under the public land laws at the time of their withdrawal. There was no showing made or offered to be made that the Fort Brooke Reservation at Tampa was ever subject to entry under any of the public land laws when it was withdrawn for a reservation. If it had never been subject to such entry, the defendant could acquire no rights by virtue of the act mentioned to enter the land under the general laws, as Congress had not secured to him such right by said act in providing for the disposition and sale of military reservations. At most he was an occupier of lands of the United States without any right of entry, and without any authority of law. We have been unable to find any authority to sanction the view that a mere trespasser upon public land has the right to question the legality of a patent issued by the United States land officers. The case would be entirely different if a settlement should be made upon public land subject to entry under the provisions of law, and we find cases holding that inchoate rights acquired under such an entry will be protected even against a patent issued in violation of such a settler's rights. In the case of Doolan vs. Carr, *supra*, which was an action of ejectment, and in which the right to attack a patent issued

for the land in question was recognized, it appears that the defendants had entered upon the land under a claim of pre-emption settlement and had made and subscribed declaratory statements of intention to pre-empt the land and presented them to the register of the proper land office, but they were refused on the ground that the land had been patented to a railroad company. The land was not subject to disposition by the land office when the patent was issued, being then embraced in Mexican grant, but had been trans-ferred to the Interior Department, and was subject to entry when the pre-emption claim was made. Winona & St. P. L. Co. vs. Ebilcisor 52 Minn., 312. In the case before us there was no showing that the land oc-cupied by the defendant was ever subject to entry under any of the public land laws by homestead entry, or that the defendant had acquired any right inchoate or otherwise to enter the land. The defendant's claim is not shown to have been in privity with the govern-ment's title in any way, and his adverse holding, under the showing made, places him in the attitude of a mere trespasser upon the land. As such we do not think he can be heard to question the legality of the patent issued by the land office. The case of Reynolds vs. Iron Silver Mining Co., 116 U. S., 687, involving the validity of a patent under a placer mine claim, decides that as the title in the veins of mineral lands known to exist and not claimed or referred to in the patent remains in the United States, the patentee had no right to dispossess one in peaceable possession of such veins whether the latter have any title or not. An examina-tion of the case will show that it did not involve the admission of proof to invalidate a patent, but whether the vein or lode, the subject of controversy, was in-cluded in the boundaries of the claim as located on

the surface and extending vertically downwards if known to exist when the patent issued.    In Cooper vs. Roberts, 18 Howard, 173, a defendant in possession of land without any title or valid right to acquire one, set up as one defense to a patent issued by the State of Michigan for the land that the officers of the State voilated a statute in granting the land after it was known or might have been known to contain minerals, and it was said by the court that "without a nice enquiry into these statutes, to ascertain whether they reserve such lands from sale, or into the disputed fact whether they were known, or might have been known, to contain minerals, we are of the opinion that the defendant is not in a condition to raise the question on this issue.    The officers of the State of Michigan, embracing the chief magistrate of the State, and who have the charge and superintendence of this property, certify this sale to have been made pursuant to law, and have clothed the purchaser with the most solemn evidence of title.    The defendant does not claim in privity with Michigan, but holds an adverse right, and is a trespasser upon the land, to which her title is attached."    It was held in Doll vs. Meador, 16 Cal., 295, that a patent not void upon its face, can not be questioned, either collaterally or directly, by persons who do not show themselves to be in privity with a common or paramount source of title.    Foss vs. Hinkel, *supra*, holds that a settlement by one as pre-emptor on land in compliance with the laws of the United States with right to make the entry is in privity with the United States, and can question the validity of the issuance of a patent to a third party for the land.    *Vide* also Southern Pacific R. R. Co. vs. Purcell, 77 Cal., 69, where it was decided that a mere possession of public land does not give any right as against the government, or pre-

vent it from disposing of the land as it pleases. The defendant not being in a situation to call in question the patent issued to plaintiff's grantor, the court did not err in excluding the evidence offered for such purpose.

This conclusion is also decisive of the questions presented here on the giving and refusing to give instructions to the jury. The plaintiff was entitled to recover the land sued for on the showing made, and the court did not err in refusing to give the charges asked by the defendant. There was no testimony before the jury to authorize the charges reuqested by the defendant and refused.

No objection was made to the introduction of the deed from Brush, the patentee, to the plaintiff, and it is not necessary to consider any questions arising under this conveyance.

There is only one other assignment of error which we deem it necessary to refer to in this opinion, and that is, the court erred in refusing to permit defendant to introduce the original record of a deed from the plaintiff to Walter B. Clarkson for the land in dispute. The purpose in offering this deed in evidence was to show that the plaintiff did not have title to the land at the time of trial. The original record book was objected to because the original deed was not accounted for, and the record offered was not a certified copy of the deed, so as to permit the introduction of a copy in lieu of the original deed. The court refused to permit the original record from the record book to be read in evidence. The Constitution, Article XVI, Section 21, provides that deeds and mortgages which have been proved for record and recorded according to law, sha'l be thaken as *prima facie* evidence in the courts of this State without requiring proof of execution, and

that the certified copy of the record of any deed or mortgage that has been or shall be duly recorded according to law shall be admitted as *prima facie* evidence thereof and of its due execution with like effect as the original when duly proved, provided it be made to appear that the original is not within the custody or control of the party offering such copy. Under this provision a duly recorded deed would be *prima facie* evidence in the courts of this State without proof of execution, and a certified copy of such duly recorded deed would likewise be *prima facie* evidence, provided it is made to appear that the original is not within the custody or control of the party offering the copy. But it is entirely clear that the provision referred to does not authorize the introduction of the original record as evidence of the existence and execution of the original deed. The court did not err in refusing to allow the original record of the deed to be read in evidence on the objections made.

It is our opinion that the judgment appealed from in this case should be affirmed on the record before us, and it will be so ordered.