ELIHU GRANGER, impleaded, etc., Plaintiff in Error, *v.* JOHN J. McGILVRA, Defendant in Error.

ERROR TO THE SUPERIOR COURT OF CHICAGO.

The power of each member of a firm to settle its debts, continues equal to each of the partners after a dissolution, unless restrained by positive agreement, or by an order of the court; nor can one partner deprive the other of this right by notifying the creditors not to pay him.

The giving a note, payable to one of the partners individually, or the payment of a debt of an individual partner by a debtor of a firm, is not such a payment as is binding on the other partner, but is good as to the one to whom it is made.

THE bill of complaint of John J. McGilvra, against Wilkinson & Granger, states that he, and Lorenzo Dow Wilkinson, became partners together as attorneys at law in Chicago, under the name of Wilkinson & McGilvra, on a verbal agreement that each should receive one-half of the profits of such business. That the copartnership continued from September, 1856, to February, 1858.

Their aggregate net receipts were $4,237.94—McGilvra's receipts being $2,127.02; Wilkinson's, $2,110.92.

That the outstanding accounts of the firm amounted to about $2,400, more or less; some good, others doubtful, and some disputed.

The indebtedness of the firm was $225. That there, in all probability, could not be realized from said outstanding accounts over $1,000 after expenses of collection. That whatever might be realized on them, would be wholly insufficient to make McGilvra whole, according to said partnership account, and pay said debt of $225. That Wilkinson also received fees, which were never entered on the books of the firm, and which ought to be charged against him in their partnership account, to the amount of $1,175.

That the moneys received by Wilkinson were, as charged above, $2,110.92; received and not charged, as above, $1,175; making, in all, $3,285.92.

The moneys received by McGilvra were, as charged above, $2,127.02; two notes assumed by him, $150; in all, $2,277.02.

Balance against Wilkinson, $1,008.90.

That in May, 1858, McGilvra, in the name of the firm of Wilkinson & McGilvra, recovered judgment against said Granger, in favor of the firm, for $1,014.25, and against said Granger as assignee, by default, in favor of the firm, for $240.70.

That about that time, said Granger made a proposition to said Wilkinson for a settlement of said judgments. Wilkinson sent for McGilvra, and they had a consultation in relation to

the settlement of the Granger judgments, and it was then and there agreed, between Wilkinson and McGilvra, that they would satisfy the two judgments for $600, (the two judgments being $697.95, after deducting $557 due from the firm to Granger for moneys before then collected by them for him,) at the same time, Wilkinson suggested that he thought he might work some money out of Granger ; McGilvra replied that he did not want to use the money under ninety days, and if Granger would give a judgment note for $300, payable to him at ninety days, McGilvra would be satisfied on his part, to satisfy said judgments of record, and that any money Wilkinson could work out of Granger he might apply on his share of the judgments—at this stage of the negotiation, Granger came in.  On hearing the subject of their conversation, Granger remarked that he wanted nothing to do with McGilvra in that matter, that he would settle with Wilkinson, without regard to McGilvra.  McGilvra replied, he was interested in the matter and had a right to be consulted, and would not recognize any settlement unless he was consulted, and assented to it.

That Granger and Wilkinson are confederating to defraud McGilvra out of his moiety of said judgments.

That Wilkinson pretended he had made a settlement with Granger, and agreed to satisfy the judgments of record without the knowledge or consent of McGilvra, and against his express and repeated remonstrances.

That since the conversation, McGilvra had expressly notified Granger not to make any settlement with Wilkinson without his consent.

The bill charges, that if any settlement was made, it was in fraud of McGilvra's rights, and was wholly fraudulent and void as against him, and asks that it may be set aside as against him.

That Wilkinson had no property but a house and lot in Chicago, worth about $3,000, subject to an incumbrance of $1,600.

That Wilkinson refused to account for the fees received as above, and threatened to satisfy the Granger judgments of record, and Granger boasted that he had settled said judgments, and threatened to have satisfaction entered of record, thereby depriving McGilvra of his moiety of the same, or any benefit whatever from the same.

Prays account against Wilkinson, of the business of the firm, and said fees ; for a receiver to collect the outstanding accounts of the firm; that the agreement with Granger (if made) may be set aside, as against McGilvra, and that he may have the full benefit of said judgments, notwithstanding such agreement; and for further relief.

The bill was taken *pro confesso*, and referred to the master to take proofs, and a decree entered, reciting service, default, order to take bill *pro confesso*, reference, and the agreement for partnership.

The total receipts (net) were $5,266. Wilkinson received $3,139.98 ; McGilvra, $2,027.02 ; difference, $1,012.96.

That the excess of Wilkinson's receipts was $862.88.

And reciting further : The recovery by the firm of the judgments against Granger, as above, and that Wilkinson and Granger, without the consent and against remonstrances of McGilvra, (of which Granger had notice,) agreed to satisfy said judgments, by Granger paying, or agreeing to pay, Messrs. Joy & Frisbie, $250, on account of a debt due them from said Wilkinson, $50 in cash, and $300 in a note running to Wilkinson individually. That afterward, Granger paid said $250 to Joy & Frisbie, and the said $300 note was turned over by Wilkinson to Joy & Frisbie on his own private debt, all with the knowledge and consent of Granger ; and thereupon Wilkinson gave Granger a receipt in full of all demands of the firm in the name of the firm, and in consideration of the sum of $600, as expressed in said receipt. And reciting that Henry S. Monroe had been appointed receiver.

It is decreed that the amount received by Wilkinson over and above the amount received by McGilvra, was $862.88.

That said agreement and settlement between Wilkinson and Granger, and the receipt given them, be set aside as against McGilvra and the firm of Wilkinson & McGilvra. That the judgments against Granger remain in full force and effect for the benefit of the firm of Wilkinson & McGilvra.

That said receiver (after indorsing on the judgments $557) issue execution for $697.95, the balance, and collect the same, with all other the outstanding accounts of the firm ; and out of the proceeds, after paying the debts of the firm and expenses of collection, he was ordered to pay McGilvra $862.88 and interest, and the residue he was to pay over, one-half to McGilvra, and the other half to Wilkinson.

BURNHAM & MARTIN, for Plaintiffs in Error.

J. J. McGILVRA, *pro se.*

CATON, C. J. We do not doubt that the court erred in entering a decree against Granger for the full amount due from him to the firm of Wilkinson & McGilvra. Even without the notice given by complainant to Granger, not to pay Wilkinson without consulting him, Granger had no right to make such

payment for the exclusive benefit of Wilkinson, and to the prejudice of the rights of McGilvra. Granger settled the demand with Wilkinson, by giving his note for a part of the amount to a creditor of Wilkinson, in satisfaction of Wilkinson's individual liability, and by his note to Wilkinson individually, for the balance agreed upon. This was in fraud of the rights of the other partner, and as to his portion of the demand it should be treated as no payment. But as to Wilkinson's half, we are of opinion that it should be treated as a payment. The bill does not pretend that Wilkinson is not able to respond to the decree for the amount claimed to be due from him to the complainant, without resorting to Wilkinson's half of the balance due from Granger, but on the contrary, it states the value of Wilkinson's property over incumbrances, to be more than sufficient to pay the amount claimed to be due from him. But the structure of the bill is such as to show that the complainant only expected or wished to set aside the settlement as to complainant's half or interest in the judgments. It avers that unless the settlement be set aside as to the complainant, he will be in danger of losing his half of the balance due on the judgments, and prays that as to him the settlement may be set aside. But even if the bill and proof had shown that Wilkinson was insolvent, as well as overdrawn with the firm, that would not deprive him of the authority as a member of the firm to settle the firm debts, although forbidden by the other partner to do so. The power of each member of a firm to settle its debts continues equal to the partners after dissolution, unless restrained or limited by positive agreement, or by an order of the court. One partner cannot deprive the other of this power by notifying the creditors not to pay him. Else each partner could thus destroy the authority of the other, and no debtor of the firm could safely pay his whole debt to any one, but must pay half to each, in order to protect himself. Wilkinson, then, still had the same right to receive payment from Granger which the complainant had, and had the payment been such as one partner was authorized to receive for the firm, it would have been binding upon the firm, unless, perhaps, Granger had known that it was the intention of Wilkinson to misapply the money and defraud the other partner; and in this case, so far as Granger did pay Wilkinson in cash, we must hold it a good payment, and binding on both partners. The balance of the payment, being in part in the payment of an individual debt of Wilkinson, and part in a note payable to him individually, is not such a payment as can bind the other partner, whose right should not be prejudiced by it. But as to Wilkinson's interest in the judgments, we are unable to understand why he should not be

satisfied, when he has received the whole of what was due from Granger and appropriated all to his own use. If Granger was amenable to him, and paid him as he did and took the risk of meeting further responsibility to the other partner, we can see no good reason why the whole settlement should be set aside and Wilkinson allowed to collect his half over again of Granger. This we do not think required by the case nor justified by the law. We think the fifty dollars paid in cash, by Granger to Wilkinson, should be credited to him as a good payment to the firm; and that he should also be credited with one-half of the balance due the firm on the judgments, as Wilkinson's proportion thereof. If, upon a final settlement of the concern by the receiver, he has funds in his hands which would otherwise go to Wilkinson, he should pay those funds to the complainant, to the amount remaining due upon the judgments, and if the receiver shall not have enough of Wilkinson's funds in his hands to satisfy the balance due to the complainant, then such funds should be applied so far as they will go, and that the complainant have execution for the balance against Granger.

The decree of the Superior Court is reversed and the suit remanded, with directions to enter a decree according to the principles here stated.

*Decree reversed.*