Phil S. Roe, Appellant, v. John A. Cooke, Individually and as Former Joint Adventurer with Plaintiff, Defendant, Frank J. Quirk and Thomas J. Quirk, Individually and as Co-executors of Estate of Bridget Quirk, Deceased, Appellees.

Gen. No. 45,996.

Opinion filed April 22, 1953. Released for publication June 3, 1953.

J. Edward Jones, of Chicago, for appellant.

Madden, Meccia & Meyer, of Chicago, for appellees; Paul B. O'Flaherty, of Chicago, of counsel.

Mr. Presiding Justice Lewe delivered the opinion of the court.

Plaintiff, a lawyer, filed a bill in equity against the executors of the estate of Bridget Quirk, deceased, and defendant Cooke, a lawyer, to recover plaintiff's portion of the balance of the fees alleged to be due Cooke and Roe for legal services rendered to the executors. In a former appeal we reversed an order of dismissal (346 Ill. App. 576). Upon consideration of defendant Thomas J. Quirk's written motion for summary judgment, supported by an affidavit, and of plaintiff's counteraffidavit, the chancellor dismissed the cause as to Thomas J. Quirk for want of equity and, on motion of defendant Frank J. Quirk the cause was dismissed

as to him for the reason that the amended complaint failed to state a cause of action. Plaintiff appeals from both orders.

The complaint alleges in substance that Cooke and Roe became associated in a joint adventure in representing the Quirks as co-executors of the deceased's estate in certain litigated matters; that Cooke and Roe agreed to divide equally all fees received from the Quirks; that during the period from May 23, 1947 to July 27, 1949 they received eight checks representing fees earned, aggregating the sum of $2,300, which were divided pursuant to the agreement; that afterwards the court found that the reasonable fees for all services rendered by Cooke and Roe were $5,500; that the Quirks were "authorized and directed" by court order to pay Cooke and Roe said sum; that Cooke "induced" defendant Thomas J. Quirk to deliver a check payable solely to Cooke for the balance of the fees amounting to $3,200 without "prior consultation" with his co-executor; that Cooke as part of the plan to defraud plaintiff and hinder him from obtaining his fees "conspired" with defendant Thomas J. Quirk; that pursuant to said plan Cooke received the check and "stealthily appropriated" all of it to his own use; and that defendant Thomas Quirk was present in court when the order directing payment of fees to Cooke and Roe was entered and that both of the Quirks had knowledge of the court order requiring payment to Cooke and Roe and of the fiduciary relationship existing between them.

The complaint prays for an order without notice or bond "depriving" Cooke of any and all authority to settle any obligation owed to plaintiff by the co-executors and that the co-executors be enjoined from "taking any further steps" to close the estate of the deceased until further order of the court.

The affidavit in support of the motion for summary judgment filed by defendant Thomas J. Quirk avers

in substance that each of the eight checks referred to in the complaint was made payable to Cooke alone; that each of the eight checks shows on its face that after delivery it was endorsed by Cooke and by plaintiff and thereafter deposited for collection and paid by the drawee bank; that defendant Thomas J. Quirk drew a check for $3,200 marked "paid in full in Bridget Quirk Estate," which was thereafter endorsed by Cooke and cashed by him; that at the time of delivering the check for $3,200 to Cooke, defendant Thomas Quirk did not know of any intention on the part of Cooke to withhold any sums due to plaintiff, and that he did not conspire with defendant Cooke for any purpose but, on the contrary, acted in good faith.

Plaintiff's affidavit states that each of the checks referred to in the complaint was mailed to the office of Cooke and Roe, at the request of plaintiff to defendant Thomas J. Quirk, after a conference between plaintiff and Cooke, except the last check which is here involved.

Plaintiff contends that since the enterprise in which he and Cooke were engaged was noncommercial and nontrading in character Cooke did not have authority to accept or endorse the final check issued by the defendant Thomas J. Quirk in the sum of $3,200.

Joint adventures have in general the legal incidents of partnership, and while it is said that a joint adventure is not regarded as identical with a partnership, the relation of the parties is so similar that their rights and liabilities are usually tested by the rules which govern partnerships. (*Ditis v. Ahlvin Construc tion Co.*, 408 Ill. 416.)

In support of his contention plaintiff relies on *Teed v. Parsons,* 202 Ill. 455; *Ulery v. Ginrich,* 57 Ill. 531; and *Gray v. Ward,* 18 Ill. 32. In each of the cases last cited the court held in effect that in partnerships not commercial in their nature one partner cannot bind the others by obtaining credit without their knowledge

187

or by the execution of promissory notes unless authority is expressly given or recognized by all the partners or implied from their general business habits. We think these cases are readily distinguishable from the present case.

In *Granger v. McGilvra*, 24 Ill. 152, cited in the briefs of both parties, the court held that payment in cash by a creditor of the law firm to one of the partners was good payment and binding on both partners. And in the recent case of *People v. Roseland State Savings Bank*, 282 Ill. App. 289, the senior member of a law firm assigned a claim of the firm against the bank for services rendered, to one of the members of the law firm who was indebted to the bank. The receiver of the bank contended that there was no proper proof of the authority from the partnership of the law firm to execute the assignment. This court held at page 297 that "The collection of fees and advances due from a client is within the scope of the authority of the members of the partnership engaged in the practice of the law." While the facts in that case are dissimilar from this case we think the rule is applicable here.

It is a matter of common knowledge that in the City of Chicago and other cities throughout the State there are law firms consisting of many members who receive varying proportions of the total fees earned by those firms. It would afford the debtor of a law firm virtually no protection in paying a partnership debt to one member of the firm if he was bound to see that the money paid to a single member of the firm was properly applied by the partner receiving it. See *Granger v. McGilvra*, 24 Ill. 152; *Major v. Hawkes*, 12 Ill. 297. Moreover, in the instant case it is undisputed that eight checks were issued by defendant Thomas J. Quirk to Cooke alone as payee over a period of more than two years without objection by plaintiff, thus establishing a course of dealing between the

188

parties from which we think the authority of Cooke to accept and cash checks can fairly be implied.

Plaintiff says that the court order fixing the fees of Cooke and Roe as attorneys for the co-executors created a trust relationship between the parties and that thereafter the co-executors ceased to hold the funds in their official capacity. The order entered in the probate court "authorizing and directing" the Quirks as co-executors to pay to Cooke and Roe the sum of $5,500 for legal services merely determined the reasonable value of the services rendered by them in order that they might be considered as a proper expense in the administration of the decedent's estate (*Rubinkam v. MacArthur*, 302 Ill. App. 71), and for this reason we think the relation of debtor and creditor which existed at the time the eight other checks were issued for fees to Cooke and accepted by plaintiff continues undisturbed by the fee-fixing order. In short, we do not think the order was intended to prescribe the precise manner of payment.

Plaintiff insists that assuming Cooke had authority to collect the fees owed Cooke and Roe by the Quirks, he could only accept payment in cash. This contention is without merit for the reason that the check was honored by the drawee bank and Cooke received the cash. (*Stephens Engineering Company v. Industrial Commission*, 290 Ill. 88.)

The allegations in the complaint that Cooke "induced" Thomas Quirk to deliver to him a check payable to Cooke; that Cooke "conspired" with him to defraud plaintiff; and that Cooke "stealthily appropriated" the fees, without supporting facts, are conclusions. (*Aaron v. Dausch*, 313 Ill. App. 524.)

As to the defendant Frank J. Quirk, his motion to dismiss admits only facts well pleaded. Conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest

189

cannot be considered. (*Hyland v. Waite*, 349 Ill. App. 213.)

 After careful examination of the complaint and the motions of the defendants Thomas J. Quirk and Frank J. Quirk to dismiss, and for summary judgment, the supporting affidavit, and the counteraffidavit of plaintiff, we are of the opinion that no triable issues of fact were presented. We are further of the opinion that the complaint as to the defendant Frank J. Quirk does not state a cause of action, and that the complaint as to Thomas J. Quirk was properly dismissed for want of equity.

We have considered the other points urged and the authorities cited in support thereof but in the view we take of this case we deem it unnecessary to discuss them.

For the reasons stated, the orders appealed from are in all respects affirmed.

*Orders appealed from affirmed in all respects.*

FEINBERG and KILEY, JJ., concur.