Peter Skontos, Also Known as Panagiotis Skoundri-
anos, Plaintiff-Appellant, v. John C. Gekas, De-
fendant-Appellee.

**Gen. No. 48,390.**

First District, First Division.
October 16, 1961.
Rehearing denied November 20, 1961.

 

Peter S. Sarelas, of Chicago (William J. Boyd, of counsel), for appellant.

John C. Gekas, of Chicago, Attorney Pro Se (Gerald A. Serritella and Milton J. Sabath, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This appeal is from an order of the Superior Court of Cook County dismissing a complaint charging the defendant with corrupt and wrongful acts in violation of his duty as attorney for the plaintiff. The appeal was taken directly to the Supreme Court which transferred the case to this court.

The sworn pleadings consist of a complaint, a bill of particulars, an answer and a reply. The matter was heard on defendant's motion for involuntary dismissal, or in the alternative, for judgment on the pleadings or summary judgment.

It appears from the pleadings that defendant filed two lawsuits for plaintiff on July 12, 1951. One suit was against John Rousiotis for $2550 which plaintiff claimed he had given to Rousiotis for safekeeping.

The second suit was against plaintiff's brother, John Skontos, seeking a partnership accounting.

The complaint in the instant case, filed on May 11, 1959, alleged *inter alia* that defendant in August, 1951, possessed funds belonging to plaintiff in the amount of $2500 and until January 6, 1955, "used for his own purposes and to his own ends" the aforementioned money. On information and belief plaintiff further charged that defendant, with intent to control and use plaintiff's money, induced John Skontos to cause plaintiff to be adjudicated incompetent in the County Court. Plaintiff claimed also that defendant, for the same purpose, petitioned the Probate Court to appoint a conservator for plaintiff's estate, and that defendant's wrongful acts caused the funds to be reduced in the Probate Court from $2500 to the sum of $2102.46. Concerning the partnership accounting suit against his brother, plaintiff alleged that the case was dismissed for want of prosecution on April 23, 1954; that after defendant had the cause reinstated he corruptly refused to prosecute it and withdrew as plaintiff's attorney without giving an account "for his acts and doings in said cause" although he had received a retainer in advance for the filing of both suits. Plaintiff claimed that by reason of defendant's wrongful conduct plaintiff was deprived of the use of his $2500, deprived of his civil rights, and compelled to spend a large sum of money in an endeavor to recover his money and to restore his civil rights. Thus he prayed for judgment against defendant in the sum of $100,000 with malice as the gist of the action.

Pursuant to an order of court, plaintiff subsequently filed a bill of particulars which recited, in part, that on motion of defendant the lawsuit against Rousiotis was dismissed on August 9, 1951, without costs, and that plaintiff specifically claimed special damages in the sum of $1170 for expenditures in his

endeavor to restore his civil rights and recover his money.

Defendant filed a voluminous answer and attached numerous verified exhibits. His pertinent allegations of fact are as follows: Plaintiff retained him to file the two lawsuits mentioned in the complaint and gave him $225 for costs and retainer. Defendant received a cashier's check dated August 2, 1951, in the sum of $2500 in settlement of the Rousiotis case. An attached photostatic copy of the check shows that it was payable to the order of John Skontos. On the back of the check appears the limited endorsement "pay to the order of John C. Gekas" signed by John Skontos. Beneath that appears the following endorsement: "pay to the order of Nikitas Nomikos conservator of the estate of Peter Skontos," and below it appears the signature of Nomikos followed by the words "Cons. Est. of Peter Skontos." The stamped endorsement and bank records show the check to have been deposited on October 2, 1953, by Nikitas Nomikos, conservator for plaintiff. Another attached exhibit was the affidavit of Nomikos stating that on September 28, 1953, the Probate Court appointed him conservator for the plaintiff, and that he received from the defendant the $2500 cashier's check, dated August 2, 1951, which he deposited to the account of Peter Skontos, incompetent, with himself as conservator. Other exhibits attached reveal that an inventory was filed in the Probate Court on November 29, 1954, listing as assets the $2500 cashier's check and the pending lawsuit against John Skontos for a partnership accounting, and that Nomikos filed a final account showing deductions of $40 for a conservator's bond, $31 for court costs, $100 in payments to and for the incompetent, and $175 paid to defendant for attorney's fees, leaving a balance of $2154 which was paid over to the Chicago City Bank & Trust Co., as the successor conservator.

Defendant denied that he caused plaintiff to be declared incompetent and attached a copy of a police report dated November 9, 1952, revealing that plaintiff was apprehended for causing a disturbance, on the complaint of his brother John, and due to his violent behavior was taken by the police to the Psychopathic Hospital. The attached transcript of the proceedings in the County Court reveals that after a hearing plaintiff was declared "a mentally ill person, incapable of managing and caring for his own estate" and was committed to the care of his brother, John Skontos. Also attached were a copy of the petition for restoration filed by plaintiff in the County Court on December 8, 1954, and verified by his present counsel, wherein plaintiff stated that he was "fully recovered" as evidenced by a doctor's certificate, and a copy of the order restoring him as a sane person.

The answer further alleged that on January 5, 1955, plaintiff filed his petition in the Probate Court for revocation of the letters of conservatorship. The attached copy of the petition sets forth the County Court order of restoration and states "that the Chicago City Bank & Trust Company submits its first and final account as conservator of the estate of your petitioner which is acceptable to this petitioner." The attached copy of the Probate Court order revoking the conservatorship recites that the conservator appeared and filed its final account, that the Ward has been restored to reason and has received a full settlement of his estate, and that the Ward "has examined said final account and found the same to be true and correct; also acknowledges the receipt of estate consenting to the approval of said final account." Defendant's answer also pleads the statute of limitations as a bar to plaintiff's claim.

Plaintiff's lengthy reply primarily reaffirmed the allegations of the complaint. It is replete with deroga-

tory accusations against defendant which are ill suited to proper pleading. Additionally, it charges that the County Court order of incompetency is void because it was not the result of a hearing in conformity with the requirements of Article II, Section 2, of the Illinois constitution and with the Due Process requirements of the Federal Constitution; that the Probate Court orders appointing a conservator and his successor are void because plaintiff was never given notice of the conservatorship proceedings; and that plaintiff was not at any time incompetent.

After an extensive hearing, the trial court, finding that there was no genuine issue of fact, granted defendant's motion for dismissal. That ruling was based upon alternative grounds; any cause of action plaintiff might have had is now barred by the statute of limitations, and apart from that statute, plaintiff failed to allege facts sufficient to state a cause of action.

Plaintiff contends that the trial court erred in determining from the pleadings that there was no triable issue of fact. He argues also that because the relation of attorney and client is one of special trust and confidence plaintiff's suit cannot be barred by the statute of limitations.

■■ It is quite clear that a motion under Section 57 of the Illinois Civil Practice Act is not intended to be used as a means of trying an issue of fact. "If, upon examination of the pleadings and affidavits, it can be fairly said that a material dispute exists as to the facts, a motion for summary judgment should be denied. (Barkhausen v. Naugher, 395 Ill 562, 70 NE2d 565; Shirley v. Ellis Drier Co., 379 Ill 105, 39 NE2d 329; Diversey Liquidating Corp. v. Neunkirchen, 370 Ill 523, 19 NE2d 363.) On the other hand, where the pleadings and affidavits show there is no triable issue of fact, a summary judgment will

be granted. Roe v. Cooke, 350 Ill App 183, 112 NE2d 511." People ex rel. Sharp v. City of Chicago, 13 Ill2d 157, 160, 161, 148 NE2d 481.

After an exhaustive inquiry we conclude that the record provides ample support for the trial court's finding that the pleadings raised no triable issue of fact. We note that at the hearing on the motion Judge Ashcraft carefully and patiently endeavored to learn from plaintiff's opprobrious pleadings the precise nature of his case. We, too, have been troubled with that problem. The answer, with attached affidavits and exhibits, revealed that the $2500 cashier's check had never been cashed by defendant, but was transferred intact to plaintiff's conservator. In his reply plaintiff did not deny this fact, nor did he attempt to explain the purpose for which the check was given. He did deny that the check represented the money collected in settlement of the Rousiotis case, and the only inference that can be drawn from the reply is that the check may have been in settlement of the partnership accounting suit against John Skontos. The record clearly refutes this inference. The affidavit of John Skontos specifically states that the sum of $2500 was "not paid in relation to the settlement of the partnership suit by Peter Skontos against this affiant," and plaintiff admitted in his pleadings that the partnership accounting suit is still pending. Moreover, plaintiff is bound by the allegations of his complaint and bill of particulars, which he never amended. The complaint stated that the $2500 withheld by defendant was the only money belonging to plaintiff. Thus plaintiff could not deny that the $2500 cashier's check embraced the identical funds which lie at the heart of this lawsuit. "A reply can not supply omissions in a complaint, add new grounds of action, or permit the taking of a position inconsistent with that alleged in the complaint." Spence v.

336

Washington Nat. Ins. Co., 320 Ill App 149, 153, 50 NE2d 128. (Citations omitted.)

The record clearly establishes, therefore, that no issue of fact existed with regard to plaintiff's funds. Defendant received the $2500 in the form of a cashier's check, and turned it over to plaintiff's conservator. This clearly refutes the assertion that defendant used the money for his own purposes. We find that plaintiff's charges that defendant conspired with and assisted others in having plaintiff declared incompetent and a conservator appointed for the sole purpose of using plaintiff's $2500 are based solely on conclusions. Nowhere in the complaint does plaintiff allege any act by defendant to support these allegations. In his answer defendant stated that he held the check intact because he felt that plaintiff was incapable of handling his affairs and money. This conclusion was borne out when later the County Court declared plaintiff to be incompetent. When a conservator was appointed defendant promptly gave the check to him. These facts do not indicate the wrongful retention of a client's funds by his attorney.

Plaintiff next attacks the validity of the proceedings in the County Court and Probate Court wherein he was adjudicated incompetent and a conservator and successor conservator were appointed. Without discussing all of the conclusions plaintiff derives from these collateral attacks we note that he did not go into either the County or the Probate Court to challenge directly the validity of the proceedings in those courts. Nor did he appeal from any of the orders entered in those courts.

■ The record reveals that plaintiff went into the County Court and requested to be restored on the representation that he was "no longer mentally ill." In the Probate Court plaintiff accepted the balance of $2102.46 in the hands of the successor conservator and

stood by in open court while the final account was approved. The difference between the original sum of $2500 and the aforementioned balance in the account consisted of payments made pursuant to Probate Court orders. Now, over four years later, plaintiff attempts to attack all the orders collaterally. "In case of a collateral attack the presumptions are in favor of the validity of the judgment attacked and want of jurisdiction to enter the same must appear on the face of the record in order to furnish a basis for collateral attack. Such cannot be shown aliunde." (In re Estate of Leichtenberg, 5 Ill App2d 336, 338, 339, 125 NE2d 277.) A scrutiny of the record in the instant case fails to reveal any jurisdictional defect in the proceedings or orders of the County and Probate Courts.

■■ Contrary to plaintiff's contentions, the record of the incompetency proceeding in the County Court indicates that the requirements of due notice and a proper hearing were satisfied. Although plaintiff did not receive notice of the application for appointment of a conservator in the Probate Court, we think the statute does not require notice to be served under the circumstances. Ill Rev Stats (1953) c 3, § 265, provides that "if a person is adjudged mentally ill . . . in a county court of any county of this state other than the court in which the petition for the appointment of a conservator is filed, . . . the proper court may appoint a conservator . . . without further hearing" and ". . . the court may require such notice and other proceedings as it deems expedient." This law enables the Probate Court to adopt the proceedings of the County Court wherein the adjudication of incompetency has taken place, and thereby render unnecessary a second trial of the same issue in the Probate Court. The legislature clearly intended that the proper court should have the discretion under these circumstances to dispense with notice to the

338

incompetent, and the validity of the provision has been upheld. (In re Estate of Reisenhus, 294 Ill App 71, 13 NE2d 501.) Moreover, plaintiff cannot be heard to complain of that proceeding because he appeared therein, after full restoration, and accepted the final accounting by the successor conservator.

The position we take on this cause renders unnecessary any discussion of plaintiff's other contentions. For the reasons stated herein the judgment of the Superior Court is affirmed.

Affirmed.

MURPHY, P. J. and ENGLISH, J., concur.